No. 79–804. CLEVELAND BOARD OF EDUCATION ET AL. *v.* REED ET AL. C. A. 6th Cir. Certiorari denied.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and MR. JUSTICE POWELL join, dissenting.

Petitioners seek to present two questions for decision: (a) whether the District Court properly found systemwide segregative intent on the part of petitioner school Board, and, (b) "[w]hether the systemwide student reassignment plan ordered by the District Court, whereby every grade in every school must have a ratio of black and white students in approximate proportion to the systemwide ratio, exceeded the violation found, particularly where the evidence showed that Cleveland's residential areas are highly segregated by race." Pet. for Cert. 3. With respect to the first issue of systemwide desegregation, the District Court found as follows in its exhaustive opinion:

"[T]he local defendants offered evidence to show that various actions complained of by the plaintiffs were supported by valid, racially neutral, educationally sound reasons. For instance, the defendants argued that they created optional attendance zones to permit students to avoid heavy traffic or other such safety hazards, or to address the problems of overcrowding. Various school construction decisions were defended as being responsive to sincere desires of local residents for neighborhood facilities. The assignment of black teachers and administrators to schools with majority black student enrollments was defended on the ground that such faculty or staff would be better able to relate to students of the same race. Where there was factual support for the claim that such decisions had compelling educational bases, or where legitimate safety concerns were being met in a plausible and nonracial manner, the allegations of the plaintiffs were set aside. However, there remain

more than 200 enumerated actions cited in the liability opinion for which the explanations of the defendants either were not credible or were not legally permissible. In these instances, the Court finds that the defendants acted (1) *not only* with awareness of the natural, probable, and foreseeable consequences of their acts, (2) *but also* with the purpose and intent to maintain racial segregation." *Reed* v. *Rhodes,* 455 F. Supp. 546, 555 (ND Ohio 1978).

The Court of Appeals affirmed this conclusion of the District Court in this language:

"Our review of this record supports the District Judge's findings of fact in this regard and we find no fault in his conclusions of law, as stated above. The findings of fact certainly cannot be termed clearly erroneous, and the conclusions of law which pertain to his 1973 findings and his 1964 findings are both entirely consistent with the opinions of the Supreme Court in *Columbus Board of Education* v. *Penick,* [443] U. S. [449] (1979), and *Dayton Board of Education* v. *Brinkman,* [443] U. S. [526] (1979)." *Reed* v. *Rhodes,* 607 F. 2d 714, 717 (CA6 1979).

The Court of Appeals, I think, was undoubtedly correct in upholding this District Court's finding of systemwide segregative intent on the basis of this Court's decisions last Term in the *Columbus* and *Dayton* cases. I would therefore not vote to grant the petition on this first issue.

The Court of Appeals, however, devoted virtually no attention to the second issue—the propriety of the *remedy* imposed by the District Court. In the Court of Appeals' opinion, which comprises 46 pages of the appendix to the petition, less than 4 are devoted to the propriety of the remedy decreed, and none of these 4 pages deal with whether the remedy was appropriate, *conceding* that a systemwide remedy could be imposed. The court focused solely on the legitimacy

of imposing a systemwide remedy, neglecting to address the propriety of the *terms* imposed by that remedy. The Court of Appeals extensively quoted language in this Court's opinion in *Columbus, supra,* to support its approval of this remedy, but that language simply has no application to the issue of whether as drastic a remedy as this may be imposed once a systemwide violation has been found.

In *Milliken* v. *Bradley,* 418 U. S. 717, 744 (1974), we held:

> "The controlling principle consistently expounded in our holdings is that the scope of the remedy is determined by the nature and extent of the constitutional violation. *Swann* [v. *Charlotte-Mecklenburg Board of Education,* 402 U. S. 1 (1971)], at 16."

This was not a novel principle then any more than it is now. It simply reflects the traditional rule that the remedy imposed by a United States district court exercising its equitable powers must restore, as nearly as possible, the situation which would have existed had the wrong not occurred. We have certainly never held that racial balance is constitutionally required once a violation is established. To the contrary, in *Swann* v. *Charlotte-Mecklenburg Board of Education,* 402 U. S. 1, 24 (1971), this Court stated explicitly that, "[t]he constitutional command to desegregate schools does not mean that every school in every community must always reflect the racial composition of the school system as a whole."

The District Court then either ignored the statement in *Swann* or formulated this remedy on the hypothesis that had there been no segregative conduct on the part of the Cleveland School Board, there would have been no racially segregated housing patterns in the city of Cleveland. For the reasons persuasively stated by Mr. Justice Powell in his opinion dissenting from the dismissal of the writ of certiorari in *Estes* v. *Metropolitan Branch, Dallas NAACP,* 444 U. S. 437, 438 (1980), this is simply not a realistic hypothesis. Conceding that there was a systemwide violation, and allowing for

the discretion and flexibility necessary for the District Court to fashion an equitable decree which would requite the constitutional wrong, that discretion did not extend to restructuring the entire demography of the city of Cleveland as reflected in its schools, unless that demography was attributable to the conduct of the petitioner school Board. While the District Court found that some of the racial housing patterns *were* attributable to the conduct of the Board, it also made clear that other factors, including the location of public housing by entities other than the Board, also had a causative effect. Even if the Constitution required it, and it were possible for federal courts to do it, no equitable decree can fashion an "Emerald City" where all races, ethnic groups, and persons of various income levels live side by side in a large metropolitan area. Because the decree of the District Court here seems flatly contrary to the language of *Swann, supra,* and *Milliken, supra,* I would grant the petition for certiorari limited to the second question.