The STATE of Utah, Plaintiff and Respondent,

v.

Robert Paul PACHECO, Defendant and Appellant.

No. 20047.

Supreme Court of Utah.

Oct. 21, 1985.

Rehearing Denied Jan. 8, 1986.

Sumner J. Hatch, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Dave B. Thompson, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant appeals a jury verdict finding him guilty of burglary of a dwelling, a second degree felony. U.C.A., 1953, § 76–6–202 (1978 ed.). We reverse the conviction and remand for a new trial.

On June 3, 1983, Detective Jeff Anderson of the Murray City Police Department was on patrol in an unmarked vehicle. At approximately 3:15 p.m., the police dispatcher alerted officers to look out for a dark blue Chevrolet with shiny wheels in connection with an afternoon home burglary. Several minutes later, Anderson saw an empty car that fit the description parked on a side street near Vine Street and 400 East, approximately one mile from the reported burglary. As Anderson watched, a man approached the car on the sidewalk, walked past it, and about halfway up a residential driveway, turned around, walked back, got into the car on the driver's side, and drove away. Anderson turned on his flashers and pulled the car over. The driver, defendant, was driving with a suspended license. Anderson asked defendant if he could search the car. Defendant consented. Anderson found three $20 bills, three $1 bills, three rolls of nickels, and $26.95 in loose change in the console between the seats; a screwdriver on the floor on the passenger's side; and a ring tucked into the covering of the driver's seat.

Anderson placed defendant under arrest for driving with a suspended license and gave him a *Miranda* warning. Defendant told Anderson he was having trouble with his car stalling and had gone over to watch the golfers on a nearby golf course. Anderson asked defendant where he had gotten the ring. Defendant replied: "I don't know about the ring. It may have been there from a previous burglary that I just got out of prison for." At trial, the judge excluded the portion of the answer concerning defendant's previous incarceration, but allowed the arresting officer to testify that defendant had stated that the ring "may have been there from a previous burglary."

On about June 13, several Murray City police cadets were canvassing neighborhoods inquiring about possible burglaries. At 443 Vine Street, the occupant, Mrs. Imai, told them that she had some missing items: three $20 bills, about $25 in change, and some rolls of nickels. A few days later, a detective interviewed her. At that time, Mrs. Imai also reported that a man's ring was missing. After Mrs. Imai described the ring and drew a picture of it, the detective showed her the ring taken from defendant. Mrs. Imai positively identified it as her husband's. At trial, Mr. Imai also positively identified the ring as his. Neither Mr. nor Mrs. Imai had seen the ring since before they had moved to Murray from Helper in the spring of 1983. Mrs. Imai also identified one of the rolls of nickels as one she had brought back with her from a trip to Las Vegas. All of the cash had been in the house on June 2 but was not there on June 6.

At trial, the Imais testified that neither of them had been in their house on the afternoon of June 3. Mrs. Imai's mother had been in the house, but the mother was 89 years old and extremely hard of hearing. Testimony indicated that someone could easily have been in the house without her knowledge.

At trial, Mrs. Ivy Pacheco testified on behalf of her son. She said that defendant had been having car trouble and had taken his carburetor to a shop to be fixed. On June 3, she drove defendant to the shop to pick up the carburetor. She gave defendant $140 in $20 bills to pay for the carbure-

tor and for insurance. Mrs. Pacheco also said that defendant had broken into his son's piggy bank that morning and gotten $13.80 in change and that he always kept change in the console between his car seats. She further testified that there were rolls of nickels around the house since she gambled in Wendover and Las Vegas occasionally.

The mechanic from the repair shop, a friend of Mrs. Pacheco's, testified that the repair bill for the carburetor was $93.41. Defendant offered five $20 bills in payment, but since the mechanic could not make change for a $20 bill, he took $80 and told defendant to bring the remaining $14 by later. The carbon copy invoice for the repair work was dated June 3, but that date was in ink and had been added later. The mechanic testified that he could not recall the exact date on which he did the work. He also noted that a "basket repair" carburetor (one brought in without the car) might not function properly after being repaired and could cause the car to stall.

At trial, the jury was instructed as follows:

> Possession of property recently stolen, when no satisfactory explanation of such possession is made, shall be deemed prima facie evidence that the person in possession stole the property.

This instruction is a verbatim recitation of U.C.A., 1953, § 76–6–402(1).

In *State v. Chambers*,[1] this Court held that an identical instruction was unconstitutional since it directly related to the issue of guilt and relieved the State of its burden of proof.[2] The Court relied on *Francis v. Franklin*[3] in which the United States Supreme Court had held that the use of a mandatory rebuttable presumption in a jury instruction is unconstitutional. In

holding the challenged instruction unconstitutional in *Chambers*, the Court said that the instruction fit within the *Francis* definition of a mandatory rebuttable presumption: "A mandatory [rebuttable] presumption ... requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted."[4]

■ That holding is dispositive of this case. Therefore, defendant is entitled to a new trial.

Defendant has raised one further point on appeal which will be at issue in a new trial and must therefore be resolved.

■ Defendant argues that the trial court erred in allowing Detective Anderson to testify during the State's case in chief that defendant had stated in response to a question regarding the origin of the ring, "[I]t may have been there from a previous burglary." The defendant contends that this statement, elicited without defendant having taken the stand or put on evidence as to his character, could only be interpreted by the jury as an admission of burglary and, thus, was highly prejudicial to defendant's case. We agree.

■ Defendant's statement was admitted ostensibly for the purpose of showing defendant's explanation for having the ring in his possession in order to establish the inference set out in section 76–6–402(1). However, as the Court said in *Chambers*, the statute is addressed to the court, not to the jury.[5] Its sole purpose is to provide a standard by which to determine whether the evidence admitted at trial warrants submission of the case to the jury.[6] If a defendant makes no satisfactory explanation of his possession of stolen property, the trial judge can conclude that the State has established a prima facie case against

---

1.  709 P.2d 321 (Utah 1985).

2.  *Id.* at 6–7.

3.  — U.S. —, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), *see also State v. Walton*, Utah, 646 P.2d 689, 691–92 (1982).

4.  *Francis*, 105 S.Ct. at 1971 n. 2 (citing *Sandstrom v. Montana*, 442 U.S. 510, 517–18, 99 S.Ct. 2450, 2455–56, 61 L.Ed.2d 39 (1979)).

5.  *State v. Chambers*, at 327.

6.  *Id.* at 327.

the defendant and submit the case to the jury. The standard remains the same whether the defendant offers an explanation for possession of the stolen property or remains silent. However, for the purposes of this standard, it is up to the defendant to offer an explanation. In the instant case, defendant did not take the stand and offered no explanation of his possession of the ring to the jury. Therefore, the trial judge would have been justified in assuming that a prima facie case of burglary had been made out against defendant.

█ Evidence of prior crimes is admissible if the evidence is relevant to prove a specific element of the crime for which a defendant is on trial. The evidence is not admissible if it is relevant solely to show a defendant's propensity to commit a crime.[7] Defendant's statement in no way is relevant to prove a specific element of the crime of burglary. Therefore, to admit the statement into evidence where defendant has offered no alternative explanation for his possession of the stolen property is highly prejudicial to defendant. The only possible effect the admission of such testimony could have would be to leave an impression with the jury of defendant's bad character. The admission of the testimony was therefore prejudicial error.

Defendant's remaining contentions concern sufficiency of the evidence and jury instructions. In light of the remand of the case for a new trial, those issues need not be addressed.

STEWART, HOWE, DURHAM, and ZIMMERMAN, JJ., concur.

---

**7.** *See State v. Saunders,* Utah, 699 P.2d 738, 741 (1985); *State v. Forsyth,* Utah, 641 P.2d 1172, 1175 (1982).