**STATE of Utah, Plaintiff and Appellee,**

v.

**William Louis FLOREZ, Defendant and Appellant.**

**No. 870003.**

Supreme Court of Utah.

June 29, 1989.

Randall W. Richards, John T. Caine, Ogden, for defendant and appellant.

David L. Wilkinson, Earl F. Dorius, Salt Lake City, for plaintiff and appellee.

HOWE, Associate Chief Justice:

Defendant William Louis Florez appeals from his jury conviction of murder in the first degree in violation of Utah Code Ann. § 76–5–202 (1978, Supp.1989).

For a period of approximately eighteen months to two years, defendant and a woman named Dana Montes had an intimate relationship and at times lived together. For a few months, the couple shared an upstairs bedroom in a home in Ogden,

Utah, and resided there with Bonnie Bruckner, her children, and Dana's uncle, Gene Montes. The testimony at trial established that defendant and Dana frequently argued during this period and often separated, but usually only for a few days at a time before reconciling their differences and continuing their relationship. On July 24, 1986, defendant had an argument with Dana, packed some of his belongings, and moved out of the home. That same night, Dana started a new relationship with Steve Meyers, the victim.

On July 27, 1986, Meyers moved in with Dana, and the two shared a room in the basement of the Ogden home. Bonnie Bruckner's fourteen-year-old son, Robert Derosa, then moved into the upstairs bedroom previously occupied by defendant and Dana. At approximately 5:30 the next morning, July 28, defendant returned to the home and tried to enter through the front door, but it was locked. He then tapped on the window of the upstairs bedroom, calling for Dana. When Robert Derosa awoke and responded that Dana did not sleep there anymore, defendant asked where she was and requested that Robert let him in. Several times, Robert refused to allow him to enter for fear of awakening the family. Eventually, however, he came through the window and said to Robert, "Don't tell anybody." Robert replied that he would not tell anybody if defendant was quiet and did not awaken Bonnie, Gene, or the children. After further inquiry about Dana's whereabouts, Robert finally told him that she was sleeping alone downstairs. Defendant then proceeded downstairs, and Robert went back to bed.

In the basement, defendant saw both Dana and Meyers naked and sleeping together on a bed. He became enraged and grabbed Dana by the hair, called her a "whore" and a "slut," "yanked" her off the bed, and hit her with his hand. He then struck Meyers with his fist, and Meyers exclaimed, "Oh, my God, he's got a knife. Run." Dana ran upstairs crying for help, and defendant fatally stabbed Meyers with the knife. Defendant ran upstairs after Dana. By then, Gene had been awakened, and he tried to stop defendant from further

beating Dana, but defendant hit them both with his fist. Robert went down the street to call the police, and Gene eventually called the paramedics.

After a few moments, defendant apparently calmed down and went downstairs to see Meyers. He asked Dana for a towel, moistened it, and began to wipe blood from Meyers, saying, "Come on, Steve, quit playing it off, you're not hurt that bad. Get up." Meyers, however, did not respond. When the police arrived, defendant gave the knife to Dana and peacefully gave himself up, stating that he had stabbed Meyers. He was charged and convicted of first degree murder, a capital offense. When the jury could not unanimously invoke the death penalty, he was sentenced to a term of life in prison. He appeals.

Defendant contends that evidence of his prior criminal convictions was impermissibly admitted at trial, contrary to rules 403, 404, 405, and 609 of the Utah Rules of Evidence. In addition, he asserts that the admission of his prior convictions during the guilt phase of his trial violated his rights to a fair trial by an impartial jury under the sixth amendment to the United States Constitution and article I, section 12 of the Utah Constitution. The statute under which defendant was convicted provides, in pertinent part:

(1) Criminal homicide constitutes murder in the first degree if the actor intentionally or knowingly causes the death of another under any of the following circumstances:

    . . . .

(d) The homicide was committed while the actor was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, ... aggravated burglary, burglary....

    . . . .

(h) The actor was previously convicted of ... a felony involving the use or threat of violence to a person.

Utah Code Ann. § 76-5-202(1)(d), (h) (1978, Supp.1989).

## I

In order to prove an element of the crime contained in subsection 76–5–202(1)(h), the State moved to admit defendant's three prior convictions for aggravated assault, a felony involving the use or threat of violence to a person. A pretrial hearing was held on this motion, and defendant, in order to avoid unfair prejudice at trial, offered to stipulate as follows:

3. The defendant has previously been convicted on three different occasions of the crime of aggravated assault, a third degree felony in the State of Utah and a crime which has been designated by statute and in case law as a crime of violence against another individual.

4. The defendant has previously moved this Court, in a Motion heard on November 26, 1986, to limit the State's use of these prior convictions in the trial of this case. Specifically, that the prosecution not be allowed to tell the jury or that the Judge not instruct the jury that, in fact, the defendant has previously been convicted of a crime of violence, that crime being aggravated assault.

5. The defendant acknowledges that the legislature has made his status an element of the offense of criminal homicide, murder in the first degree pursuant to § 76–5–202 and in an effort to preserve his own rights and to accommodate the State, the defendant is, by this Stipulation, willing to acknowledge that in the trial to begin on December 1, 1986[,] if the State proves beyond a reasonable doubt that this defendant intentionally or knowingly caused the death of another person and the jury finds the same to be the case, the defendant agrees that the Court will enter a conviction pursuant to § 76–5–202, criminal homicide, murder in the first degree as a capital offense.

In light of this offer to stipulate, the trial court initially ruled that the State would not be allowed to use defendant's prior felony convictions in its case in chief, but that it could, for impeachment purposes, inquire into his record if he were to take the witness stand. The court later reversed its decision and ruled that it would

not order the State to accept the stipulation and that it would allow into evidence, by way of prison commitment orders, defendant's prior convictions of aggravated assault during the State's case in chief. The court held that the evidence was admissible during the guilt phase of trial to prove an element of the crime and relied on our language in *State v. Shaffer*, 725 P.2d 1301, 1307 (Utah 1986): "While evidence of other bad acts is inadmissible to show the general disposition of the defendant, such evidence, when relevant and competent, is admissible to prove a material fact." We address the admissibility of the evidence during the guilt phase of trial in part III of this opinion.

Defendant argues that he offered a viable and reasonable stipulation which would have accomplished the proof required under our capital murder statute without creating the propensity for unfair prejudice at trial. As a general rule, however, "a party may not preclude his adversary's offer of proof by admission or stipulation." *State v. Bishop*, 753 P.2d 439, 475 (Utah 1988). In that case, the defendant claimed error when the trial court refused to order the State to stipulate to the identities of the victims. The defendant had admitted killing five young boys, the manner of the killings, and the methods of disposing of their bodies. He moved to preclude the State from introducing certain identification evidence, including photographs of the victims, clothing, and testimony from the victims' parents and guardians and claimed on appeal that "the prosecution could have achieved the full probative value of the admitted testimony and exhibits without unfairly prejudicing defendant simply by stipulating to the identities of the victims." *Bishop*, 753 P.2d at 475. We found no error and quoted from *United States v. Grassi*, 602 F.2d 1192, 1197 (5th Cir.1979), *reh'g denied*, 606 F.2d 321 (5th Cir.1979), *vacated on other grounds*, 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1131 (1980):

A piece of evidence can have probative value even in the event of an offer to stipulate to the issue on which the evidence is offered. A cold stipulation can deprive a party "of the legitimate moral

force of his evidence," and can never fully substitute for tangible, physical evidence or the testimony of witnesses. In most cases, a party has the right "to present to the jury a picture of the events relied upon."

*Bishop,* 753 P.2d at 475 (citations omitted).

Notwithstanding this general rule, evidence is subject to rule 403 of the Utah Rules of Evidence, which provides for the exclusion of relevant evidence, if its probative value is substantially outweighed by the danger of unfair prejudice. Thus, "the State is bound to stipulate to facts, to use an alternative mode of proof, or to forego introduction of the material if the evidence it offers cannot satisfy rule 403...." *Bishop,* 753 P.2d at 475. In that case, the prosecutorial need for most of the disputed evidence was significant since it established "essential elements" of the crimes for which the defendant was charged, and we ruled that the probative value of the evidence simply was not outweighed by unfair prejudice. *Bishop,* 753 P.2d at 476.

The recent case of *People v. Hills,* 140 A.D.2d 71, 532 N.Y.S.2d 269 (N.Y.App.Div. 1988), *appeal denied,* 73 N.Y.2d 855, 537 N.Y.S.2d 502, 534 N.E.2d 340 (N.Y.1988), addresses the legal effect of an offer by a defendant in a criminal trial to stipulate to a material element of a crime charged. There, the defendant was convicted of first degree robbery and first degree assault. Before trial, he offered to stipulate that the victim, as a result of the criminal incident, suffered serious physical injury, a statutory element of the crimes charged. The prosecutor declined the offer. The defense counsel then moved the trial court to preclude the prosecution from adducing medical testimony concerning the victim's injuries on the ground that such testimony would create undue prejudice to the defendant. The trial court denied this request. Applying the New York statutes, the state supreme court, appellate division, upheld the trial court, stating that "it was incumbent upon the prosecution to prove, beyond a reasonable doubt" that the victim suffered serious physical injury, *Hills,* 532 N.Y.S.2d at 272, and ruled: "[E]xcept in situations where a statute provides other-

wise, the decision as to whether to decline or accept such a stipulation lies wholly within the prosecutor's discretion. Thus, the trial court properly refused to compel acceptance of the proffered stipulation in this case." *Hills,* 532 N.Y.S.2d at 273.

The court in *Hills* explained that by definition, "a stipulation is a voluntary agreement between the parties, not a unilateral decision of one party forced upon another," and that the risks involved in accepting or refusing offered stipulations "do not call for the involuntary imposition of a particular strategy by either the opposing counsel or the court." *Hills,* 532 N.Y.S.2d at 273. At the conclusion of a well-reasoned discussion of the issue, the New York court ruled, in sum:

> [A] prosecutor may not be compelled to accept a stipulation as to an element of a crime since "a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate *moral force of his evidence*" (Wigmore, Evidence, § 2591 [4th ed. 1981]). Moreover, "[s]o long as the defendant maintained his guilty plea, the State had the right to prove its case up to the hilt in whatever manner it chose, subject only to the rules of evidence and standards of fair play."

*Hills,* 532 N.Y.S.2d at 277 (emphasis in original; citation omitted). In that case, the admission of the evidence was in full compliance with the rules of evidence, rule 403 in particular, and also with standards of fair play in that it was admitted "not for the 'sole purpose' of arousing the emotions of the jury, but, rather, for the legitimate purpose of proving elements of the charged crimes." *Hills,* 532 N.Y.S.2d at 277.

Often, as in the present case, the status of the defendant regarding prior felony convictions is an element of the crime charged. In *United States v. Williams,* 612 F.2d 735, 740 (3d Cir.1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1328, 63 L.Ed.2d 770 (1980), the defendant was convicted of violating a statute prohibiting a convicted felon from receiving firearms shipped in interstate commerce. There, the government was not required to join in the

defendant's proffered stipulation as to his prior felony convictions, because it "had a right to proffer proof on the point admitted." (Citation omitted.) The Arizona Court of Appeals has held that the State is not required to accept a stipulation as to a defendant's prior felony convictions when the State has a legitimate need to prove the facts to which the defendant offers to stipulate. *State v. Leonard,* 151 Ariz. 1, 8, 725 P.2d 493, 500 (Ct.App.1986) (defendant offered to stipulate to his prior DWI convictions, statutory elements of the crime charged, to avoid undue prejudice before the jury); *see also United States v. Flenoid,* 718 F.2d 867, 868 (8th Cir.1983); *People v. Martinez,* 712 P.2d 1070, 1071–72 (Colo.Ct.App.1985); *People v. Huston,* 113 Ill.App.3d 70, 72–73, 446 N.E.2d 568, 570 (1983). But see *People v. Hall,* 28 Cal.3d 143, 152, 167 Cal.Rptr. 844, 849, 616 P.2d 826, 831 (1980), for the rationale behind a minority rule requiring a prosecutor to accept a proffered stipulation and refrain from introducing evidence of other crimes to prove that essential element to the jury. This rule was recently abrogated by the adoption of article I, section 28(f) of the California Constitution, as explained in *People v. Valentine,* 42 Cal.3d 170, 182–83, 228 Cal.Rptr. 25, 32–33, 720 P.2d 913, 920–21 (1986).

█ In the instant case, the State had the burden to prove beyond a reasonable doubt that defendant had previously been convicted of "a felony involving the use or threat of violence to a person" under subsection 76–5–202(1)(h). The State has the right to prove every essential element of a crime in the most convincing manner within the bounds of the rules of evidence and fair play. *State v. Lerch,* 63 Or.App. 707, 716, 666 P.2d 840, 847 (1983); *State v. Crenshaw,* 98 Wash.2d 789, 807, 659 P.2d 488, 498 (1983); *see also United States v. Ellison,* 793 F.2d 942, 948–49 (8th Cir.1986), *cert. denied,* 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986); *United States v. Davis,* 792 F.2d 1299, 1305–06 (5th Cir. 1986), *cert. denied,* 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986). We conclude that the trial court did not err in refusing to order the State to accept the stipulation proffered by defendant.

## II

Because we have determined that the evidence of defendant's prior convictions was relevant to establish an essential element of the crime charged, it is admissible at the appropriate time of trial (see part III, *infra*) unless "its probative value is substantially outweighed by the danger of unfair prejudice." Utah R.Evid. 403. As we stated in *Bishop,* "[T]he State is bound to stipulate to facts, to use an alternative mode of proof, or to forego introduction of the material if the evidence it offers cannot satisfy rule 403...." *Bishop,* 753 P.2d at 475. We conclude here, as we did in *Bishop,* that it is clear that the prosecutorial need for the evidence was significant since it established an essential element of the crime charged and the probative value simply was not substantially outweighed by the danger of unfair prejudice. *Bishop,* 753 P.2d at 476.

Because the evidence was relevant and admissible to prove an element of the crime charged, we need not address the issues raised by defendant concerning admissibility under rules 404(b) and 405(b). These rules prohibit the use of "other crimes, wrongs, or acts ... to prove the character of a person in order to show that he acted in conformity therewith." Such evidence is admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In addition, where the character or trait of character of a person "is an essential element of a charge ... proof may also be made of specific instances of his conduct." We do note, however, that "[t]he evidence is not admissible if it is relevant solely to show a defendant's propensity to commit a crime." *State v. Pacheco,* 712 P.2d 192, 195 (Utah 1985) *cert. denied,* 479 U.S. 813, 107 S.Ct. 64, 93 L.Ed.2d 22 (1986); *see also State v. Shaffer,* 725 P.2d 1301, 1307 (Utah 1986); *State v. Saunders,* 699 P.2d 738, 741 (Utah 1985). *See generally* M. Graham, *Handbook of Federal Evidence* § 404.5 (2d ed.

1986). Here, the evidence of the prior convictions was admitted to prove a specific element of the crime charged, not solely to show defendant's propensity to commit the crime.

We need not address the issues raised under rule 609 concerning admissibility of the prior convictions for impeachment purposes.

### III

While defendant does not directly challenge the constitutionality of subsection 76–5–202(1)(h), he contends that his constitutional right to a fair trial by an impartial jury under the sixth amendment to the United States Constitution and article I, section 12 of the Utah Constitution was violated when evidence of his prior convictions was admitted in the guilt phase of trial. He further asserts that the presumption of innocence in his favor under Utah Code Ann. § 76–1–501(1) (1978) was jeopardized for the same reason. He argues that "[t]he avoidance of prejudice is particularly compelling where the Court had an alternate method in which to reasonably present the case to the jury while still preserving the defendant's rights" and suggests that the court should have used a bifurcated approach similar to that used in our habitual criminal statute. Utah Code Ann. §§ 76–8–1001 to 76–8–1002 (1978). There, evidence of a defendant's prior convictions is not presented to the jury until after a determination of guilt has been made on the primary charge.

The State responds that there was no constitutional violation in presenting evidence of defendant's prior convictions during the guilt phase of trial, because the legislature had made such convictions a statutory element of the crime charged. For support, it cites *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606, *reh'g denied,* 386 U.S. 969, 87 S.Ct. 1015, 18 L.Ed.2d 125 (1967), where the Texas habitual criminal statute was upheld even though it did not require a bifurcated proceeding but allowed the jury to be informed of prior convictions before guilt on the primary charges were determined:

To say that the two-stage jury trial in the English–Connecticut style is probably the fairest, as some commentators and courts have suggested, and with which we well might agree were the matter before us in a legislative or rule-making context, is a far cry from a constitutional determination that this method of handling the problem is compelled by the Fourteenth Amendment. Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure.

*Spencer v. Texas,* 385 U.S. at 567–68, 87 S.Ct. at 655–56, 17 L.Ed.2d at 616–17. The State also cites *Marshall v. Lonberger,* 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 853, n. 6, 74 L.Ed.2d 646, 661, n. 6 (1983), *cert. denied,* 481 U.S. 1055, 107 S.Ct. 2195, 95 L.Ed.2d 850 (1987), as a reaffirmation of *Spencer v. Texas.*

In our recent case of *State v. Bishop,* Utah's child sexual abuse statute faced a similar challenge. In that case, the defendant contended that the trial court erred in interpreting subsection 76–5–404.1(3)(g) (Supp.1988) to permit the jury to find aggravating circumstances enumerated therein during the guilt phase of the criminal action. *Bishop,* 753 P.2d at 484. He asserted that the subsection suffered from various constitutional infirmities, the essence of his argument being that it interfered with his right to a fair trial. In response, we stated:

In *McMillan v. Pennsylvania,* [477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986),] the United States Supreme Court said: "[W]e should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties." The state legislature has chosen to have the jury consider the circumstances found in subsection (3)(g) at trial. Allowing such evidence during the guilt phase of a criminal action is not patently offensive and is the procedure sometimes used in the other penal statutes.... The fact that some members of this Court might have drafted the statute in issue differently

does not render the statute invalid as unconstitutional. This conclusion is not changed because the legislature has seen fit to allow the trier of fact to consider uncharged prior bad acts in the guilt phase of a criminal proceeding. If a statute is constitutional, it is not proper for this court to edit the legislature's work to conform the statute so that it reads in accordance with this Court's view on how the statute should have been drafted.

*Bishop,* 753 P.2d at 487 (citations omitted). The statute, we said, "promotes a legitimate legislative objective without undermining the principle that guilt must be established by probative evidence and beyond a reasonable doubt." *Bishop,* 753 P.2d at 488.

█ This reasoning applies equally to subsection 76–5–202(1)(h) of our first degree murder statute, and we uphold its constitutionality. We note, however, that Justice Zimmerman advocated a bifurcated approach to determine the questions of guilt and eligibility for enhancement under section 76–5–404.1. *Bishop,* 753 P.2d at 498 (Zimmerman, J., concurring in the result); *see also State v. Gardner,* 101 Utah Adv.Rep. 3, 13–14, (Jan. 31, 1989) (Zimmerman, J., concurring). In that opinion, Justice Zimmerman determined that bifurcation was required on both constitutional and nonconstitutional grounds. Justice Durham agreed. Justice Stewart did not agree that bifurcation was constitutionally required, but concurred with Justice Zimmerman that a bifurcated approach is necessary even on nonconstitutional grounds to avoid error at trial. This is further clarified by Justice Stewart in *State v. Wareham,* 772 P.2d 960, 964 (Utah 1989). Such an approach may very well avoid prejudice to a defendant while a jury is deciding his guilt of the crime charged. In the recent case of *State v. James,* 767 P.2d 549, 557 (Utah 1989), an interlocutory appeal *before* trial, we unanimously exercised our inherent supervisory power over trial courts and ordered a bifurcated proceeding in the defendant's trial under subsection 76–5–202(1)(h). Thus, a majority of this Court has determined that

the admission of a defendant's prior convictions pursuant to subsection 76–5–202(1)(h) in the guilt phase of the trial is error. We next consider whether the error in the instant case resulted in prejudice requiring reversal.

Rule 30(a) of the Utah Rules of Criminal Procedure states: "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." *See also* Utah R.Evid. 103(a). We have interpreted this standard to mean that an error warrants reversal "only if a review of the record persuades the Court that without the error there was *'a reasonable likelihood of a more favorable result* for the defendant.'" *State v. Knight,* 734 P.2d 913, 919 (Utah 1987) (emphasis in original); *State v. Fontana,* 680 P.2d 1042, 1048 (Utah 1984) (quoting *State v. Hutchison,* 655 P.2d 635, 637 (Utah 1982)). We have further stated: "It is entirely consistent with this aim to require that when error has eroded a reviewing court's confidence in the outcome of a particular trial, we should start over and conduct a new trial." *Knight,* 734 P.2d at 920.

Our thorough review of the record convinces us that the error below was prejudicial and requires a new trial. By defendant's own admission, he caused the death of the victim. The only issue at trial was whether the homicide was first degree murder, second degree murder, manslaughter or negligent homicide. The jury was instructed on these lesser offenses, and verdict forms were provided for each. Defendant specifically asked the jury for a manslaughter conviction and clearly based his defense on the elements of that crime. The theory of the defense was that the crime was a "spur of the moment" killing committed under circumstances of "extreme emotional disturbance" and "caused by the circumstances that a person happens to come upon" (finding the victim and Dana Montes naked together on a bed). Defendant's theory that he acted in the "heat of passion" clearly sought to establish that his culpable mental state was less than intentional or knowing.

We do not doubt that "evidence of prior convictions and other bad acts has tremendous potential to sway the finder of fact unfairly" and increases the likelihood of conviction. *Gardner*, —— P.2d at —— n. 1 (Zimmerman, J., concurring). In light of defendant's manslaughter theory and sufficient evidence in the record to support it, we cannot now say that allowing the jury to consider evidence of his prior convictions before determining his culpable mental state was harmless error. Our confidence in the verdict is eroded to the extent that absent the error, there is a reasonable likelihood that the outcome would have been more favorable to defendant.

The fact that the State presented evidence of an alternate aggravating circumstance by which the jury could convict defendant of capital homicide does not change our conclusion. § 76–5–202(1)(d) (where the actor "intentionally or knowingly causes the death of another" in the course of "aggravated burglary [or] burglary"). The prejudicial error occurred before the jury could determine whether defendant committed the charged crime of "intentionally or knowingly caus[ing] the death of another." In addition, we find that the evidence does not "overwhelmingly support[ ] a conviction" under this theory. *State v. Tillman*, 750 P.2d 546, 566 (Utah 1987).

Defendant's conviction is reversed, and the case is remanded for a new trial which shall be bifurcated in compliance with our decisions in *State v. James* and *State v. Wareham*.

HALL, C.J., and STEWART, J., concur.

ZIMMERMAN, Justice (concurring in the result).

I concur in the result reached by Justice Howe's opinion, and specifically in its recognition that when prior crime evidence unrelated to the conduct out of which the charges in the case before the court arose is made an element of the charged crime by the legislature, a majority of this Court requires that the trial be bifurcated to avoid the introduction of such unrelated prior crimes evidence before the defendant's guilt on the underlying charge is determined. I write separately only to note my continued adherence to the views expressed in my separate opinion in *State v. Bishop*, 753 P.2d 439, 494–99 (Utah 1988), which were joined in whole by Justice Durham and in part by Justice Stewart, *see State v. Gardner*, —— P.2d ——, —— (Jan. 31, 1989) (separate opinions of Stewart, J., and Zimmerman, J.).

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, J.