2004 UT App 489

**SALT LAKE CITY, Plaintiff and Appellee,**

v.

**Mark J. STRUHS, Defendant and Appellant.**

No. 20030393–CA.

Court of Appeals of Utah.

Dec. 30, 2004.

---

David V. Finlayson, Salt Lake City, for Appellant.

Sarah A. Giacovelli, Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and ORME.

## OPINION

GREENWOOD, Judge:

¶ 1 Defendant Mark J. Struhs appeals his conviction for Driving Under the Influence of Alcohol and/or Drugs, a class B misdemeanor, in violation of Salt Lake City Code section 12.24.100. Defendant argues that the trial court abused its discretion in admitting evidence at trial of two prior convictions for alcohol related driving offenses. We reverse and remand for a new trial.

## BACKGROUND

¶ 2 On April 30, 2002, at approximately 4:00 a.m., Salt Lake City Police Officer Gary Trost stopped Defendant's vehicle because, while the headlights were working, the taillights were not. Officer Trost activated his overhead lights, but Defendant failed to pull his car over to the side of the street. Officer Trost then activated his siren. Defendant still did not pull his car over. Officer Trost followed Defendant into a parking garage where Defendant parked the car. There was a male passenger also in the car. Officer Trost testified that as he approached Defendant's vehicle and spoke with Defendant, who was still in the car, Officer Trost could smell a very strong odor of alcohol coming from the car. After asking Defendant to exit the vehicle, Officer Trost testified that he could smell alcohol on Defendant's breath. Officer Trost noticed that during their conversation,

Defendant had his hand on the car for balance and observed a slur in Defendant's speech.

¶ 3 Officer Trost asked Defendant if he had been drinking. According to Officer Trost, Defendant claimed he was coming from the Cabana Club, had tried to wait until his beers had "wore off," and that "before [he] left [he] tried to drink lots of water." Officer Trost noticed that Defendant's eyes were bloodshot, that he was having a difficult time completing sentences, and that he had trouble remembering things. The first field sobriety test Officer Trost performed was the Horizontal Gaze Nystagmus (HGN) test. Officer Trost had been trained that there was a correlation between the presence of HGN and alcohol impairment. Officer Trost testified that he observed six out of six possible clues indicating the presence of HGN. While he was giving the HGN test, Officer Trost testified that Defendant was swaying. Officer Trost did not perform the other two field sobriety tests because Defendant told him he had recently undergone surgery on his knee and hip. Officer Trost then administered a portable breath test which tested positive for alcohol. Officer Trost arrested Defendant for driving under the influence of alcohol and/or drugs (DUI).

¶ 4 After arresting Defendant, Officer Trost requested that Defendant submit to a chemical test. Officer Trost explained that Defendant had the option of a breath test at the police station or a blood test at the site of arrest. After Defendant chose to take a blood test, an officer called a phlebotomist. According to testimony of other officers involved in the arrest, the phlebotomist arrived in ordinary street clothes because he had been called out of bed to respond to the scene. According to Officer Trost, once the phlebotomist arrived, Defendant became "out of control," yelling "it's the devil." Defendant refused the blood test. Defendant again refused the blood test after he was read the refusal admonition by police. Defendant asked to be taken to Holy Cross hospital to have the blood test done there.

¶ 5 Defendant's testimony of the events differed slightly. Defendant testified that he was called around 11:00 p.m. to pick up his friend who had been drinking at the Cabana Club. Defendant stated that he did not drink because he had taken some painkillers as part of his recovery from recent hip and toe surgeries. Defendant testified that he had rented the car he was driving that night and was unfamiliar with it. He stated that he did not know he needed to turn the taillights on because the headlights came on automatically. Defendant also testified that he was using nasal and chest inhalants that night for his asthma, allergies, and sinus infection. According to Defendant, after police officers approached him and his friend, Defendant's friend told the officers that it was he who had been drinking and smelled of alcohol. Defendant also testified that after testing positive on the breath test, he told the officers that he had a lozenge in his mouth and described his inhalers. Regarding the phlebotomist, Defendant explained that when he agreed to the blood test, he thought it would be done in an ambulance or by an EMT-type person. Describing the events, Defendant stated that he had not "had a blood—a field test before, a blood test." Defendant testified that when he saw the phlebotomist, the phlebotomist looked "quite disheveled." Defendant testified that he was scared about the possibility of infection because of his recent surgeries. Upon cross-examination, Defendant testified that one of his inhalers contained alcohol.

¶ 6 Prior to Defendant's cross-examination, the trial court called a recess. The trial court asked counsel for Salt Lake City (the City) about the line of questioning anticipated on cross-examination. The City asked the trial court for permission to question Defendant about two prior instances where he submitted to chemical tests and was subsequently convicted of alcohol related driving offenses. The City argued that Defendant had made an issue of his reason for refusing the blood test, and therefore, it should be able to use the prior convictions to rebut this testimony. Defendant objected, arguing, among other things, that the two prior convictions involved breath tests rather than blood tests, and that Defendant's medical condition was significantly different at the time of the two prior incidents. The trial

court allowed the questioning, reasoning that it did not matter whether the previous tests were blood or breath, and that by giving a reason for refusing the blood test, Defendant put the alternative explanation at issue, and his credibility on that question could be challenged through the prior incidents. . The trial court specifically noted that the convictions were not to be presented as evidence of prior bad acts, but for impeaching Defendant's credibility only. As a result, the City questioned Defendant about the two prior convictions. Eventually, the jury found the Defendant guilty of Driving under the Influence of Alcohol and/or Drugs. Defendant subsequently filed a timely appeal.

## ISSUE AND STANDARD OF REVIEW

██ ¶ 7 Defendant argues that the trial court erred in admitting evidence of his two prior alcohol related convictions. "We review a trial court's decision to admit evidence of other crimes, wrongs, or bad acts for an abuse of discretion." *State v. Fedorowicz,* 2002 UT 67, ¶ 24, 52 P.3d 1194, *cert. denied,* 537 U.S. 1123, 123 S.Ct. 859, 154 L.Ed.2d 805 (2003). "To properly exercise its discretion, a trial court must scrupulously examine the evidence before it is admitted." *Id.* (quotations and citations omitted).

## ANALYSIS

¶ 8 Defendant contends that the trial court abused its discretion when it allowed the City to question him about two prior alcohol related driving convictions. Specifically, Defendant argues that the Utah Rules of Evidence do not provide a basis whereby these prior convictions were admissible. In response,

the City argues that the evidence is admissible under Utah Rules of Evidence rule 404(b)[1] and rule 608(c). The City also argues that even if the trial court erred in allowing the questioning, the error was harmless because of other evidence presented to the jury.

### I. Utah Rule of Evidence 608(C)

██ ¶ 9 Under rule 608(c), "[b]ias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." Utah R. Evid. 608(c). Normally, a cross-examiner is granted wide latitude in exposing a witness's potential bias. *See State v. Hackford,* 737 P.2d 200, 203 (Utah 1987). However, the right to impeach under rule 608(c) is limited by Utah Rule of Evidence 403. *See id.* Rule 403 permits the exclusion of otherwise relevant evidence only "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403.

¶ 10 The City argues that, for two reasons, the prior conviction testimony was properly admitted under rule 608(c). The first is because Defendant asserted that the reason he refused the blood test was his fear of infection. The second reason is because Defendant testified that he had never previously taken a field test. According to the City, the prior convictions evidence gave Defendant a motive to misrepresent, and therefore, his credibility was at issue and subject to im-

---

1. During the recess at trial when the parties argued about the City's request to question Defendant about the prior convictions, neither of the parties, nor the trial court, referred to any specific rule of evidence. However, it is clear that the trial court did not conduct the three part analysis required for admission of evidence under rule 404(b). Rule 404(b) requires the trial court to first ask, whether such evidence is being offered for a proper, noncharacter purpose under 404(b); second, whether such evidence meets the requirements of rule 402; and third, whether the evidence meets the requirements of rule 403. *See State v. Webster,* 2001 UT App 238, ¶ 31, 32 P.3d 976. While the trial court may have determined that the impeachment of Defen-

dant's credibility is a proper, noncharacter purpose, *see State v. Houskeeper,* 2002 UT 118, ¶ 28, 62 P.3d 444 (holding that impeaching defendant's credibility was a proper purpose under rule 404(b)), the trial court did not analyze the evidence under rules 402 and 403. Furthermore, the trial court specifically stated that the evidence "is not admitted for prior bad acts. It is not admitted to show propensity, and I won't allow it to be used for that purpose." Because the court did not conduct a full analysis, and because the court implied that the evidence was not being admitted as prior bad acts evidence, but rather as evidence to impeach, we will not review the court's decision under rule 404(b).

peachment under rule 608(c). While we agree that Defendant's credibility was subject to challenge by the City, we disagree that testimony of Defendant's prior convictions was proper impeachment evidence under rule 608(c).

¶ 11 In comparison, the facts surrounding the two prior convictions differ significantly from those in the present case. The prior cases involved chemical breath tests rather than blood tests, and in the previous cases, Defendant did not refuse the breath tests. These differences are important when considering the City's purposes for introducing the prior convictions. The City sought to use the prior convictions to impeach Defendant's story that he refused the blood tests because of fear of infection. We are unpersuaded that evidence that Defendant previously submitted to a wholly different type of field sobriety test is relevant to impeach Defendant's reason for refusing a blood test in this case.[2]

¶ 12 The City also argues that the prior convictions evidence is proper to impeach Defendant's testimony that he had never previously taken a field test. Because the context of Defendant's statement is important in determining the relevance of the prior convictions evidence, we include the exact language of Defendant's testimony:

[Question]. So in any event, what did they tell you about the blood test?

[Defendant]. The blood test. Oh, that they were going to call somebody, right, and they were going to have a blood test taken, get a—you know, I'll be able to do a blood test.

[Question]. Did anyone describe in detail how they were going to do this?

[Defendant]. No, they said somebody would be coming over.

[Question]. Okay.

[Defendant]. And then we would do the blood test.

[Question]. Okay

[Defendant]. I was thinking they were going to come over in like an ambulance or emergency type vehicle or some kind of EMT configuration. *I haven't had a blood—a field test before, a blood test.* So I just sat there and waited.

(Emphasis added.)

¶ 13 The context of Defendant's testimony shows that he denied having previously taken a field blood test. It was not as the City contends, a denial of ever having taken a field test. Again, we find the evidence of the previous convictions to be of little relevance in impeaching Defendant's testimony. The City's claim that Defendant had a motive to misrepresent is unsupported by the facts and requires an overgeneralization of the terms "field test" and "chemical test." For these reasons, we conclude that the prior convictions evidence provides insufficient probative value for these impeachment purposes.

¶ 14 After determining the probative value of the prior convictions evidence, the trial court must still consider the potential for unfair prejudice against Defendant. *See Hackford*, 737 P.2d at 203. The trial court must exclude the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice...." Utah R. Evid. 403. Utah courts have long recognized the prejudicial effect of prior conviction evidence. "We do not doubt that 'evidence of prior convictions and other bad acts has tremendous potential to sway the finder of fact unfairly' and increases the likelihood of conviction." *State v. Florez*, 777 P.2d 452, 459 (Utah 1989) (citation omitted); *see also State v. Holder*, 694 P.2d 583, 584 (Utah 1984) (per curiam) (stating "[s]uch evidence of the commission of other crimes must be used with extreme caution because of the prejudicial effect it may have on the finder of fact.").

¶ 15 Indeed, in this case, the trial court stated it was concerned about the prejudicial effect of the evidence on Defendant. However, the trial court nonetheless failed to weigh this "danger of unfair prejudice" with

2. It is important to note that Defendant introduced substantial evidence supporting his story that he refused the field blood test out of fear of infection, including testimony from his physician. Furthermore, Defendant insisted on taking a blood test under more sanitary conditions. These factors weigh against the City's theory that Defendant created the infection story in order to avoid taking the blood test.

what it viewed was the probative value of the prior convictions evidence. *See* Utah R. Evid. 403. There is little probative value to the prior convictions evidence, and there is a substantial danger of unfair prejudice by its admission. Because the trial court did not "scrupulously examine the evidence before it [was] admitted," *State v. Fedorowicz*, 2002 UT 67, ¶ 24, 52 P.3d 1194, *cert. denied*, 537 U.S. 1123, 123 S.Ct. 859, 154 L.Ed.2d 805 (2003), the trial court abused its discretion when it allowed questioning concerning Defendant's prior alcohol related convictions.

## II. Harmless Error

¶ 16 Although we have determined that the trial court abused its discretion by allowing the evidence, we will reverse only if the error was harmful. "Our confidence in the verdict [must be] eroded to the extent that absent the error, there is a reasonable likelihood that the outcome would have been more favorable to defendant." *State v. Florez*, 777 P.2d 452, 459 (Utah 1989). However, "'[e]rroneous admission of evidence is harmless if there is convincing, properly admitted evidence of all essential elements of the case.'" *State v. Bruce*, 779 P.2d 646, 656 (Utah 1989) (citation omitted).

¶ 17 The City argues that the testimony of the police officers regarding Defendant's impairment is sufficient by itself to convict Defendant of driving under the influence. It cites Defendant's failure to pull over, his failure to turn on the car's taillights, the various physical indicators observed by police, and Defendant's alleged statements that he tried to wait until the beers wore off before leaving the Cabana Club. However, Defendant presented considerable evidence to counter the City's case, including testimony explaining his failure to turn on the taillights, the scent of alcohol in the car, the positive breath test, and his refusal to submit to a street-side blood test by a disheveled, ununiformed phlebotomist. Given Defendant's rebuttal evidence, absent the error by the trial court in admitting the prior convictions evidence, there is indeed "a reasonable likelihood that the outcome would have been more favorable to defendant." *Florez*, 777 P.2d at 459. Therefore, the trial court's ad-

mission of the prior convictions evidence was not harmless error.

## CONCLUSION

¶ 18 The factual circumstances surrounding Defendant's prior alcohol related convictions were significantly different than the events which occurred in this case. The prior convictions evidence was not relevant to the impeachment of Defendant's testimony. Further, the trial court abused its discretion by admitting the evidence without properly weighing the probative value of the evidence with the danger of unfair prejudice as required under rule 403. *See State v. Hackford*, 737 P.2d 200, 203 (Utah 1987). Because there was little probative value in admitting the evidence of the prior convictions, and there was a substantial danger of unfair prejudice, the evidence of Defendant's prior convictions should not have been admitted.

¶ 19 Additionally, because Defendant was able to counter much of the City's evidence, absent the trial court's error, there is a reasonable likelihood that the outcome would have been more favorable to Defendant, and therefore, the trial court's error was not harmless.

¶ 20 Accordingly, we reverse and remand for a new trial.

¶ 21 WE CONCUR: NORMAN H. JACKSON and GREGORY K. ORME, Judges.