THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TRACY HILLS, Appellant.

Second Department, August 29, 1988

### APPEARANCES OF COUNSEL

*Philip L. Weinstein (Elizabeth J. Vila* of counsel), for appellant.

*Elizabeth Holtzman, District Attorney (Barbara D. Underwood, Richard T. Faughnan* and *Peter L. Brightbill* of counsel), for respondent.

### OPINION OF THE COURT

SPATT, J.

██ ██ This case presents a question of first impression in this State—the legal effect of an offer by a defendant in a criminal trial to stipulate to a material element of a crime charged. We hold that the prosecution is under no legal obligation to accept such an offer. Therefore, the refusal of the prosecutor to accept the defendant's offer with respect to the element of serious physical injury, and the trial court's refusal to compel its acceptance by precluding medical evidence were proper. We further find that the probative value of the medical evidence, as to both the degree of injury and the defendant's intent, outweighed any prejudice to the defendant by its admission. Accordingly, the judgment of conviction is affirmed.

### I

THE CRIME

This case arises out of an assault and robbery of Lewyn McClain, aged 70 years at the time of trial, committed on a Brooklyn street shortly after midnight on October 4, 1984. The defendant was identified as the perpetrator within minutes of the crime and was subsequently charged with two counts of robbery in the first degree, two counts of assault in the first degree, and one count of robbery in the second degree.

The evidence offered by the prosecution at trial established

that on the night in question, Mr. McClain, a retired munici-
pal employee, went to the corner of Herkimer Street and New
York Avenue in Brooklyn to make a call from a public
telephone. As Mr. McClain was walking away after complet-
ing his call, he was approached by a person who looked like a
woman and who was attired in blue jeans, a gold-colored
jacket and spike-heeled shoes. The person asked whether he
"wanted some sport, Pops". Mr. McClain replied, "No, get
away from me, you old whore". The person then came toward
Mr. McClain and shouted for him to "[g]et out of this block,
old man". Mr. McClain quickened his pace and, upon turning
to look behind him, saw that the person was chasing him with
a knife. Mr. McClain pulled out his own knife to defend
himself.

A similarly attired second person quickly joined in the
attack upon Mr. McClain. The second person ran behind Mr.
McClain while the first person taunted him and menaced him
with the knife. The attackers continuously circled McClain
and cut off any avenue of escape. While this was transpiring,
the defendant, who is male but who was attired as a woman
wearing a wig and a red jacket, approached from across the
street carrying a piece of wood. The defendant went behind
Mr. McClain. Within seconds, Mr. McClain felt a blow to the
back of his head. He fell to his knees and was struck again.
The second blow landed behind his right ear. Mr. McClain lost
consciousness briefly but recalled feeling someone searching
through his pockets as he lay on the ground.

At the trial, Mr. McClain testified that his money, wallet,
credit cards, identification and a duffle bag he had been
carrying were taken.

Kevin McDonald, a security guard who worked and lived in
the neighborhood, witnessed the attack on Mr. McClain. At
the trial, Mr. McDonald testified that he had seen the defen-
dant, dressed variously as a man or woman, in the area on an
almost daily basis for approximately 3 to 6 months preceding
the crime. He further testified that he recognized the defen-
dant among the people pursuing Mr. McClain that night and
observed the defendant strike Mr. McClain over the head with
a board. Once Mr. McClain had fallen to the ground, the
defendant went through the victim's pockets while the other
attackers kicked the victim on the side of his body.

While Mr. McDonald called the police from a public tele-
phone, the defendant and two accomplices ran past him. Mr.

McDonald then spotted and flagged down a car he knew to be an unmarked police car. The police car was being driven by Sergeant Neil Spadaro. After speaking to Kevin McDonald, Sergeant Spadaro drove after three people who were walking away from the intersection. One of the three turned toward the police vehicle, and then all three began to run. Sergeant Spadaro pulled in front of the three people and ordered them to stop. He put the three people, one of whom was the defendant, in the back of the police car and drove back to where Mr. McClain was still lying on the ground. Mr. McClain identified only the defendant who was then arrested while the other two people were released. The defendant told Sergeant Spadaro that he had witnessed, but had not participated in, the attack on Mr. McClain.

At the trial, the defendant testified that he did not strike or rob Mr. McClain. He admitted that he had frequented the corner of Herkimer and New York Avenue a "couple of nights a week" for many weeks. The defendant stated that on the night in question, he was dressed as a woman in a long wig and a red jacket and was working as a prostitute on that corner. He testified that he observed two people following and then fighting with Mr. McClain. In the course of the fight, he observed a person whom he described as 6 feet tall, 140 pounds, with braided hair and wearing jeans and a gold-colored jacket, strike Mr. McClain. Although he did not know the attacker's name, he stated that he had seen this person on the street corner on a number of prior occasions. The defendant stated that he ran over to the scene of the assault, saw Mr. McClain lying on the ground, bleeding, then walked away, and was quickly arrested by plain-clothes police officers.

THE MEDICAL EVIDENCE

Before the opening statements, the defendant's attorney offered to stipulate that Mr. McClain sustained serious physical injuries as a result of this incident. The prosecutor declined the offer. The defense counsel then asked the trial court to preclude the prosecution from adducing medical testimony concerning the victim's injuries on the ground that such testimony "would create undue prejudice" to the defendant. The court denied this request, stating: "The People have the right to prove the case the way in which they want to prove their case, providing it's within the confines of this law, and the Court knows of no ruling wherein the People may not bring in a doctor to show the serious injuries that the complainant suffered".

With respect to his injuries, Mr. McClain testified that he felt pain behind his right ear and was confined to the hospital for 22 days. He also stated that he lost his hearing in his right ear and part of a tooth, and that since the assault he had been unable to walk straight due to an impairment of his equilibrium. At the time of trial, approximately 1½ years after the crime, Mr. McClain continued to be examined by his family doctor monthly and by a neurologist semiannually.

The testimony of Mr. McDonald and Sergeant Spadaro relevant to the victim's injuries was limited to their observations of blood seeping from the right side of Mr. McClain's head. The defendant similarly testified that Mr. McClain was bleeding.

The prosecution called Dr. Paul Daniel Carlisle, the chief resident in neurology at Kings County Hospital. The defense counsel renewed his motion to preclude this witness's testimony, which was again denied by the court. The prosecutor did, however, agree to a stipulation offered by the defense that Dr. Carlisle was an expert in neurology. Dr. Carlisle testified that he examined Mr. McClain in the emergency room of Kings County Hospital on October 4, 1984. Although Mr. McClain was conscious and alert, the doctor observed blood and cerebrospinal fluid dripping from his right ear. Dr. Carlisle explained that cerebrospinal fluid is a fluid contained in a sac surrounding the brain which serves the dual purposes of keeping the brain moist and protecting it from impact.

Dr. Carlisle also observed soft-tissue swelling over the right side of Mr. McClain's head. He reviewed X rays of Mr. McClain's skull and observed an "easily identifiable linear scar fracture". He further noted blood behind Mr. McClain's right eardrum and that the patient had marked difficulty hearing in the right ear. Dr. Carlisle concluded that the injury suffered by Mr. McClain "damaged both the hearing aspect of the inner ear and * * * the vestibular aspect, which is the apparatus in the brain which allows us to walk and perform motion tasks and maintain balance".

THE CHARGE

The trial court submitted to the jury 4 of the 5 counts charged in the indictment. Two of the submitted counts, assault in the first degree and robbery in the first degree, as charged in the third and fourth counts of the indictment, respectively, were crimes which included, as an element, serious physical injury. Assault in the first degree was

charged in the fourth count of the indictment pursuant to Penal Law § 120.10 (1), which provides:

"A person is guilty of assault in the first degree when:

"1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument".

Robbery in the first degree was charged in the third count of the indictment under Penal Law § 160.15 (1), which provides:

"A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

"1. Causes serious physical injury to any person who is not a participant in the crime".

Penal Law § 10.00 (10) defines the term "serious physical injury" as: "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ".

Applying these statutes to the instant case, it was incumbent upon the prosecution to prove, beyond a reasonable doubt, that Mr. McClain suffered injury which either created a substantial risk of death or caused protracted impairment of his health or of the function of any bodily organ. With respect to the assault charge, the prosecution also had the burden of proving that the defendant intended that Mr. McClain suffer such an injury.

The jury found the defendant guilty of assault in the first degree as charged under the above-quoted subdivision. The jury did not reach a verdict on the charge of robbery in the first degree under the infliction of serious physical injury theory, because, pursuant to the court's instructions, it did not consider that count after having found the defendant guilty of robbery in the first degree pursuant to Penal Law § 160.15 (3), under the theory that a dangerous instrument was used in the commission of the robbery.

II

On appeal, the defendant contends that the trial court's refusal to direct the prosecution to accept the proffered stipu-

lation that Mr. McClain had suffered serious physical injury, thereby preempting the testimony of Dr. Carlisle, deprived him of a fair trial under both the State and Federal Constitutions. The crux of this contention is that, in light of the offer to stipulate, the probative value of the allegedly "protracted and gruesome" medical testimony was outweighed by its prejudicial effect.

THE STIPULATION

■ First, we address the question, never before expressly decided in this State, of whether a prosecutor may be compelled to stipulate to an element of a charged crime. We hold that except in situations where a statute provides otherwise (see, e.g., CPL 200.60), the decision as to whether to decline or accept such a stipulation lies wholly within the prosecutor's discretion. Thus, the trial court properly refused to compel acceptance of the proffered stipulation in this case.

A stipulation is generally described as "[a]n agreement, admission, or concession made in a judicial proceeding by the parties thereto or their attorneys, in respect of some matter incident to the proceeding, for the purpose, ordinarily, of avoiding delay, trouble, and expense" (Ballentine's Law Dictionary 1217 [3d ed 1969]; see also, 4 Wigmore, Evidence § 1058 [Chadbourn rev 1972]; Fisch, New York Evidence § 803 [2d ed 1977]; Richardson, Evidence § 216 [Prince 10th ed 1973]; McCormick, Evidence § 262 [3d ed 1984]). Thus, by definition, a stipulation is a voluntary agreement between the parties, not a unilateral decision of one party forced upon another. Of course, by declining an offer to stipulate, a party risks the possibility that he will ultimately be unable to prove the fact or facts covered by the stipulation. However, such risks are inherent in a choice of trial strategy and do not call for the involuntary imposition of a particular strategy by either the opposing counsel or the court. Accordingly, in this case, the trial court properly refused to interfere with the presentation of the People's case in this respect.

In support of his position that due process dictated acceptance of the proffered stipulation in this case, the defendant relies upon holdings of the Supreme Court of California, primarily, the case of *People v Hall* (28 Cal 3d 143, 167 Cal Rptr 844, 616 P2d 826). In *Hall,* one of the charged crimes was possession of a firearm which included as an element that the possessor had previously been convicted of a felony. In that case, the prosecution declined the defense offer to stipulate to

the defendant's prior felony conviction, and the trial court denied a motion to preclude evidence of the prior conviction. Although the appellate court concluded that a new trial was not necessary, it held that the refusal to stipulate was error. The court stated: "if a defendant offers to admit the existence of an element of a charged offense, the prosecutor must accept that offer and refrain from introducing evidence of other crimes to prove that element to the jury" *(People v Hall,* 28 Cal 3d 143, 152, 616 P2d 826, 831, *supra).*

In so holding, the Supreme Court of California cited to numerous prior decisions of that court and the California Court of Appeal, including *People v Washington* (95 Cal App 3d 488, 157 Cal Rptr 58), which held that a prosecutor must accept a defense offer to stipulate to the defendant's knowledge of the nature of a narcotic substance in a prosecution for the sale of heroin.

The law of California is contrary to that of New York and every other State and every Federal circuit which has considered this question. For example, in the context of an appeal in a criminal case, this court reversed a defendant's conviction on the ground that the defendant was improperly prevented from presenting the testimony of character witnesses *(People v Helms,* 243 App Div 818). In so holding, the court commented, "The [trial] court's statement that the district attorney would concede the good reputation of the defendant did not suffice" *(People v Helms, supra,* at 818).

In civil actions, it is well established in New York that a stipulation *is a voluntary* agreement between two or more parties to an action, or their attorneys *(see,* CPLR 2104; *see also, Klein v Mount Sinai Hosp.,* 61 NY2d 865, 866 ["A stipulation concerning any matter in an action is not binding unless it is made in open court between counsel, contained in a writing subscribed by the party or his attorney, or reduced to the form of an order and entered"]; *Matter of Whalen v Corsi,* 279 App Div 1113, 1114, *rearg and lv denied* 280 App Div 901 ["This is a civil proceeding, and the parties may, by stipulation or by acts and conduct, waive any rights to which they might otherwise have been entitled"]). In a negligence action, the Appellate Division, First Department, held that it was error to refuse to permit the plaintiff to develop the qualifications of her medical expert after the plaintiff's counsel rejected the defendant's concession of the expert's qualifications *(Counihan v Werbelovsky's Sons,* 5 AD2d 80, 84), stating: "Since the jury had the duty of evaluating the testi-

mony of the expert, plaintiff was entitled to have the jury know his material professional qualifications, and a concession by defendant could not inhibit that right".

The United States Courts of Appeal have consistently upheld the principle that stipulations are voluntary agreements between the parties. In *United States v Williams* (612 F2d 735, 740, *cert denied* 445 US 934), the Third Circuit held that the Government was not required to join in the defendant's proffered stipulation as to an element of the crime, i.e., the defendant's prior felony conviction. The court reasoned that requiring such a stipulation would be tantamount to amending the statute *(accord, United States v Mishkin,* 317 F2d 634, 638 [2d Cir], *cert denied* 375 US 827; *Parr v United States,* 255 F2d 86, 88 [5th Cir], *cert denied* 358 US 824; *United States v Three Winchester 30-30 Caliber Lever Action Carbines,* 504 F2d 1288 [7th Cir]; *United States v Brickey,* 426 F2d 680, 686 [8th Cir], *cert denied* 400 US 828; *Alire v United States,* 313 F2d 31, 34-35 [10th Cir], *cert denied* 373 US 943).

A stipulation does not remove an element of a crime from a statute. Notwithstanding the stipulation, every element has to be charged and submitted to the jury. Therefore, a stipulation cannot act to prevent the prosecution from presenting all admissible evidence as to every element. As the United States Court of Appeals for the Second Circuit stated in *United States v Natale* (526 F2d 1160, 1167, *cert denied* 425 US 950): "The plea of not guilty places every issue in doubt, and not even undisputed fact may be removed from the jury's consideration, either by direction or by omission in the charge".

Similarly, the courts of other jurisdictions have uniformly held that "the State may introduce evidence to prove every element of the offense even where defendant offers to stipulate with respect thereto" *(State v Peltack,* 172 NJ Super 287, 293, 411 A2d 1156, 1159; *see also, State v Morris,* 641 SW2d 883, 889 [Tenn] ["Stipulations are a matter of mutual agreement and not a matter of right by one party or the other in an adversary proceeding"]; *People v Rosario,* 166 Ill App 3d 383, 519 NE2d 1020, 1025-1026 [in a prosecution for aggravated arson, which included as an element the presence of one or more persons in the burned premises, the State was properly permitted to adduce testimony concerning a three-year-old child killed in the fire, despite the availability of evidence of other persons who escaped]).

One often-stated rationale for this rule is that a defendant's

stipulation "would not relieve the State of the burden to prove its entire case beyond a reasonable doubt so long as defendant maintained his plea of not guilty" *(State v Elkerson,* 304 NC 658, 666, 285 SE2d 784, 789-790). Stated differently, a defendant's offer to stipulate is not a sound basis for precluding the prosecution from presenting relevant material evidence as to an element of a charged crime *(accord, State v Holmes,* 609 SW2d 132, 135 [Mo]; *see also, Dunning v Maine Cent. R. R. Co.,* 91 Me 87, 39 A 352, 356; *State v DeJesus,* 194 Conn 376, 386, 481 A2d 1277, 1283 [the defendant's stipulation as to the content and voluntariness of his confession "cannot preempt the state from proving each element of the crimes charged with the most convincing evidence"]; *State v Leland,* 190 Ore 598, 227 P2d 785, 799, *affd* 343 US 790, *reh denied* 344 US 848).

Another equally viable reason advanced in support of the rule against involuntary stipulations to an element of a crime is that the State "cannot be robbed of the fair and legitimate moral force of its case merely because the stipulation is offered" *(State v Lindsey,* 404 So 2d 466, 475 [La]; *accord, Arrington v State,* 233 So 2d 634, 636 [Fla]; *see also, Stockton v Commonwealth;* 227 Va 124, 314 SE2d 371, 384, *cert denied* 469 US 873).

Notably, even the courts of California have indicated that there is room for flexibility in their rule requiring the prosecutor to stipulate on demand. In *People v Poon* (125 Cal App 3d 55, 178 Cal Rptr 375), decided a year after the Supreme Court of California's decision in *People v Hall (supra),* the Court of Appeal of California held that the prosecution was not required to accept a stipulation that the complainant had been raped and thereby render inadmissible the medical evidence corroborating the fact of the rape. In that case, the court applied a "well-recognized exception" that: " 'A prosecutor is not required to stipulate to the existence of any elements of the crime he is attempting to prove where the stipulation will impair the effectiveness of the prosecutor's case and foreclose his options to obtain a conviction under differing theories' " *(People v Poon,* 125 Cal App 3d 55, 79, 178 Cal Rptr 375, 390, *supra,* quoting from *People v Robles,* 2 Cal 3d 205, 213, 85 Cal Rptr 166, 171, 466 P2d 710, 715).

Thus, the overwhelming weight of authority supports a rule that a prosecutor may not be forced to accept an offer to stipulate to an element of a charged crime at the risk of precluding proof of that element. The rationale in support of

this rule, as illustrated in the above-discussed cases, is three-fold. First, a stipulation does not remove the element from the fact finder's consideration and, accordingly, does not lessen the prosecution's burden of proof. Second, the prosecution is entitled: " 'to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight' " *(Parr v United States,* 255 F2d 86, 88, *cert denied* 358 US 824, *supra).*

Finally, involuntary imposition of stipulations upon a prosecutor has the effect of improperly interfering with the prosecutor's trial strategy. "It is not for the Trial Justice, no matter how well motivated, to usurp the role of counsel for either side in a criminal trial because of the court's conception as to how the case should be presented" *(People v Ellis,* 62 AD2d 469, 471; *see also, People v Jordan,* 138 AD2d 407).

It must be further noted that in this case the proffered stipulation was limited to a concession that Mr. McClain had *suffered* a serious physical injury. It was silent as to the defendant's intent to inflict such injury, which the prosecution was required to prove in connection with the charge of assault in the first degree under count four of the indictment. Consequently, the stipulation was narrower than the evidence which the defendant sought to preclude.

It is well established that medical testimony as to a victim's injuries is often highly relevant to the issue of intent in a criminal prosecution *(see, People v Bruen,* 119 AD2d 685; *People v Bell,* 94 AD2d 894, 896, *affd* 63 NY2d 796; *People v Danaher,* 49 AD2d 984). In this case, the degree and type of injuries were relevant to proving both that Mr. McClain suffered a serious physical injury as defined in Penal Law § 10.00 (10) and the intent of the person who inflicted such injuries. The severity and location of the injuries is often indicative of the force of blows inflicted which, in turn, tends to prove, albeit circumstantially, the intent of the person inflicting such blows. Thus, even under the "California rule" advanced by the defendant, the prosecutor could not have been compelled to accept the narrow stipulation offered in this case *(see, People v Hall,* 28 Cal 3d 143, 167 Cal Rptr 844, 849, 616 P2d 826, 831, *supra).*

PREJUDICE VERSUS PROBATIVE VALUE

█ In addition, the defendant contends that the medical testimony in this case should have been excluded on the

ground that its probative value as to proving serious physical injury was outweighed by its prejudicial effect. This contention, which is separate from but related to the question of whether a prosecutor may be compelled to stipulate to an element of a charged crime, is based on the assertions that the medical testimony was "protracted", "gruesome" and "graphic". The defendant's contention is without merit.

Initially, we note that substantiation of the defendant's characterizations of the medical evidence cannot be found in the record. Indeed, the medical testimony, detailed above, was brief, covering only eight pages of transcript. It was also technical and clinical in nature. Dr. Carlisle stated that, upon examination, he observed blood and cerebrospinal fluid dripping from Mr. McClain's right ear. It is significant to note that no photographs of McClain were received in evidence. While this testimony paints a somewhat unpleasant picture, to label it as "gruesome" and "graphic", as does the defendant, distorts the true meaning of those words (see, People v Bell, 63 NY2d 796, 797 [photographs depicting a knife imbedded in the victim's back were "not gory" but merely "startling"]).

Moreover, even if this testimony were gruesome or inflammatory, it could not be excluded unless the potential prejudicial impact outweighed the probative value. That evidence was clearly relevant in that it was logically probative of facts to be proved (Fisch, New York Evidence § 3 [2d ed 1977]; see also, People v Davis, 43 NY2d 17, 27, cert denied 435 US 998, rearg dismissed 61 NY2d 670; People v Johnson, 47 NY2d 785, 787, cert denied 444 US 857; Richardson, Evidence § 4 [Prince 10th ed 1973]).

Dr. Carlisle's testimony tended to prove that Mr. McClain suffered serious physical injury, i.e., "physical injury which creates a substantial risk of death, or which causes * * * protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). In addition, the fracture of Mr. McClain's skull and the rupture of the sac surrounding the brain, as related in Dr. Carlisle's testimony, dramatically elucidated the force of the blows and viciousness of the attack. This evidence was, therefore, also probative of the necessary mental culpability on the part of the defendant.

In the context of photographic evidence, the Court of Appeals in People v Pobliner (32 NY2d 356, 370, rearg denied 33

NY2d 657, *cert denied* 416 US 905), held: "Photographic evidence should be excluded only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant".

In *Pobliner,* the evidence at issue was enlarged photographs of the bloodstained corpse of the deceased in her bed and at the morgue. The court determined that the photographs were relevant and admissible because they confirmed testimony that the deceased was asleep in bed when she was murdered and by depicting "three clustered bullet holes near the left temple," indicating "marksmanship and deliberateness in the killing" *(People v Pobliner, supra,* at 370).

We perceive no reason to distinguish between testimonial and photographic evidence in this regard. Applying the standard set forth in *Pobliner (supra),* it is clear that the evidence in the instant case was admitted, not for the "sole purpose" of arousing the emotions of the jury, but, rather, for the legitimate purpose of proving elements of the charged crimes *(see, e.g., People v Bethune,* 105 AD2d 262, 267; *People v Emick,* 103 AD2d 643, 658). On the other side of the scale, the prejudicial effect of the medical evidence in this case was minimal *(see, People v Bell,* 63 NY2d 796, 797, *supra).* Thus, on balance, the evidence was properly admitted.

■ In sum, we hold that a prosecutor may not be compelled to accept a stipulation as to an element of a crime since "a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate *moral force of his evidence"* (9 Wigmore, Evidence § 2591 [Chadbourn rev 1981]). Moreover, "[s]o long as the defendant maintained his not guilty plea, the State had the right to prove its case up to the hilt in whatever manner it chose, subject only to the rules of evidence and standards of fair play" *(State v Adler,* 16 Wash App 459, 465, 558 P2d 817, 821). In this case, the admission of the testimony at issue was in full compliance with the rules of evidence and standards of fair play.

We have examined the defendant's remaining contentions and find them to be either unpreserved for appellate review or without merit.

Accordingly, the judgment appealed from should be affirmed.

BROWN, J. P., KUNZEMAN and EIBER, JJ., concur.

Ordered that the judgment is affirmed.