STATE of North Dakota, Plaintiff
and Appellee,

v.

James Elwood NORMAN, Defendant
and Appellant.

Cr. No. 920291.

Supreme Court of North Dakota.

Oct. 26, 1993.

Patricia L. Burke (argued), State's Atty., Bismarck, for plaintiff and appellee.

Marvin M. Hager (argued), Bismarck, for defendant and appellant.

NEUMANN, Justice.

James E. Norman appealed from his judgment of conviction for class AA felony murder. We affirm.

In the evening of January 13, 1992 James shot and killed his wife, Pamela Norman, in her home. James and Pamela's three children, Jamie, Jimmy, and John, witnessed the shooting. They told police officers that their mother had been shot by their father. Police found the murder weapon in James' automobile. James was arrested the next day, and he was charged with murder.

A jury found James guilty as charged, and he was sentenced by the district court to life imprisonment without possibility of parole for 30 years. James filed a timely notice of appeal from his conviction. Trial counsel was then granted permission to withdraw from the case, and new counsel was appointed to represent James on this appeal.

Before trial, James and the State stipulated that Pamela died on January 13, 1992, by multiple gunshot wounds fired from the Taurus .357 magnum caliber revolver that was found in James' automobile. James did not dispute that he fired the shots that killed Pamela. Instead, he offered a defense under Chapter 12.1–04.1, N.D.C.C., that he lacked criminal responsibility for his actions by reason of mental disease or defect at the time of the alleged offense. To assist in that defense, James requested and received a psychiatric examination at public expense, which was conducted by Dr. Karl Ulrich, a licensed psychiatrist at the North Dakota State Hospital. Dr. Ulrich concluded that James did not lack criminal responsibility for his actions

because at the time of the shooting James did not lack substantial capacity to comprehend the nature or the consequences of his conduct. James then requested and was denied a second psychiatric examination at public expense. On appeal, James asserts that the denial of his request for a second examination constituted reversible error.

Section 12.1–04.1–02, N.D.C.C., authorizes state funded mental health services for certain defendants:

"*Court authorization of state-funded mental-health services for certain defendants.* A defendant who is unable to pay for the services of a mental-health professional, and to whom those services are not otherwise available, may apply to the court for assistance. Upon a showing of a likely need for examination on the question of lack of criminal responsibility or lack of requisite state of mind as a result of the defendant's mental condition, *the court shall authorize reasonable expenditures from public funds for the defendant's retention of the services of one or more mental-health professionals. . . .*" [Emphasis added.]

James requested an examination by a licensed psychiatrist at the State Hospital, and the court granted that request. However, James complains that Dr. Ulrich is an employee of the State, that he is not a licensed forensic psychiatrist, and that he had no background in forensic psychiatry until becoming employed with the State.

■ James' examination was not inadequate merely because it was conducted by a government employee at the State Hospital. *See State v. Indvik*, 382 N.W.2d 623 (N.D. 1986). Dr. Ulrich is the assistant medical director for the State Hospital and is also the medical director of the forensic and the extended treatment units there. Dr. Ulrich's deposition testimony reveals that he has conducted approximately 185 forensic evaluations during his career. He has testified in other court proceedings as a mental health expert. The record also reveals that Dr. Ulrich conducted a thorough evaluation of James' psychiatric condition. He interviewed James, he analyzed various test results, and he reviewed additional relevant information gathered by other mental health professionals.

James asserts that Dr. Ulrich's evaluation was "tainted" because Dr. Ulrich knew that one of the employees at the State Hospital had been accused of injuring James' ear while James was staying at the hospital. Dr. Ulrich testified in his deposition that as a supervisor at the hospital he wanted any misconduct by employees at the hospital to be discovered and the involved employee appropriately disciplined. We are unpersuaded that there is any merit to James' assertion that Dr. Ulrich's evaluation was in any way biased or tainted by James' allegations of employee misconduct at the hospital.

■ In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court held that when a defendant makes a preliminary showing that his insanity at the time of the offense is likely to be a significant factor at trial, he has a federal constitutional right to have the state provide access to a competent psychiatrist to examine him and to assist in the evaluation, preparation, and presentation of the defense. However, the court expressly limited the state's obligation to providing "one competent psychiatrist." *Id.*, 470 U.S. at 79, 105 S.Ct. at 1094, 84 L.Ed.2d at 63.

We are unpersuaded that the trial court's denial of James' request for a second evaluation deprived James of either his constitutional or statutory right to publicly funded mental health services. No specific need or reason was shown. James has cited no authority giving a criminal defendant a right to shop for a psychiatrist at public expense until he finds one who will support his theory of the case. We conclude that the trial court did not err in refusing to authorize a second evaluation.

James also asserts that he received ineffective assistance of counsel during the trial. Through his appellate counsel, he complains that trial counsel waived the issue of insufficiency of the evidence on appeal by failing to bring a motion for judgment of acquittal at the conclusion of the State's case. *State v. Allen*, 237 N.W.2d 154 (N.D.1975) (motion for judgment of acquittal at the close of the

prosecution's case in chief preserves the issue of insufficiency of the evidence). *But see State v. Himmerick,* 499 N.W.2d 568 (N.D. 1993) (motion for judgment of acquittal is not necessary to preserve issue of insufficiency of the evidence in a bench trial case). James, writing his own supplement to counsel's appellate brief, also complains that his trial counsel was "never ready for court proceedings" and that trial counsel did not adequately communicate with James in preparing the case.

■ Effective assistance of counsel is guaranteed to criminal defendants by our state and federal constitutions. *Woehlhoff v. State,* 487 N.W.2d 16 (N.D.1992). In *State v. Thill,* 473 N.W.2d 451, 454 (N.D.1991), we summarized the procedure we use for reviewing an ineffective assistance of counsel argument that is raised in an appeal from a judgment of conviction:

"We have repeatedly stated that ineffective assistance of counsel claims should generally be raised in post conviction proceedings where an evidentiary record can be made. *E.g., State v. Ricehill,* 415 N.W.2d 481 (N.D.1987). However, when an ineffective assistance of counsel argument is urged on direct appeal we will review the record to determine if assistance of counsel was plainly defective, requiring a reversal of the conviction. *See State v. Sayler,* 443 N.W.2d 915 (N.D. 1989). If from an examination of the record we cannot conclude that assistance of counsel was plainly defective, and if no other grounds for reversal exist, we will affirm the judgment without prejudice to the defendant pursuing an ineffective assistance of counsel claim at a post conviction proceeding where an adequate record can be developed. *See State v. Frey,* 441 N.W.2d 668 (N.D.1989)."

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate both deficient representation by counsel and prejudice caused by the deficient representation. *Sampson v. State,* 506 N.W.2d 722 (N.D.1993). The burden of proving an ineffective assistance of counsel claim is on the defendant and, in reviewing the claim, we are mindful that it is for trial counsel and not the

trial courts to determine trial strategy and tactics. *State v. Wilson,* 488 N.W.2d 618 (N.D.1992). Consequently, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Zeno,* 490 N.W.2d 711 (N.D.1992). We will not second guess an unsuccessful counsel's defense strategy through the distorting effects of hindsight. *See Houle v. State,* 482 N.W.2d 24 (N.D. 1992).

■ James did not dispute that he fired the shots that killed Pamela; rather, his defense was that he lacked criminal responsibility for his actions. At the conclusion of the State's case it was obvious that the State had presented a prima facie case in support of the class AA felony murder charge against James. Therefore, we conclude that trial counsel's failure to move for judgment of acquittal at the close of the State's case did not fall below reasonable standards of practice so as to constitute ineffective assistance of counsel. Also, it is not obvious on this record that trial counsel was so inadequately prepared or so failed to communicate with James in handling his defense that trial counsel's representation constituted ineffective assistance of counsel.

■ James' trial counsel made a motion before trial to transfer venue of the case from Burleigh County on the ground that pre-trial publicity would preclude James from receiving a fair trial before unbiased jurors in Burleigh County. The trial court conditionally denied the motion:

"I appreciate that this is a very serious charge, of course, and that the defendant is entitled to a trial by a fair and impartial jury, and I'm as much concerned with that happening as with any aspect of this case and I will do my best to see to it that that happens and if I begin to believe during the jury selection process that there is a problem with picking fair and impartial jurors, we will stop and we will change the location to a different place. But for now the motion is denied."

A jury was selected and the motion for change of venue was not renewed. James asserts that the trial court committed revers-

ible error by denying his motion for change of venue. We disagree.

Rule 21(a), N.D.R.Crim.P., provides:

"*(a) For Prejudice in the County or Municipality.* The court upon motion of the defendant shall transfer the proceeding as to that defendant to another county or municipality whether or not that county or municipality is specified in the defendant's motion if the court is satisfied that there exists in the county or municipality in which the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial."

A motion for change of venue is addressed to the sound discretion of the trial court, whose decision will not be reversed on appeal absent a showing of abuse of discretion prejudicial to the defendant. *State v. Purdy,* 491 N.W.2d 402 (N.D.1992). While there are some cases in which prejudice to the defendant is so clear that a change of venue should be ordered promptly, generally voir dire examination is an appropriate occasion to determine whether it is possible to select a fair and impartial jury. *State v. Leidholm,* 334 N.W.2d 811 (N.D.1983). In this case the trial court properly conditioned his initial denial of the motion for change of venue on whether difficulties in selecting a fair and impartial jury manifested themselves during the voir dire process.

During the voir dire examination only a few jurors were challenged for cause and the defense did not exercise all of its peremptory jury challenges. Although many of the potential jurors acknowledged having heard or read media reports about the shooting, they indicated that they could fairly and impartially decide the case on the evidence presented at the trial. Under these circumstances, we conclude that the trial court did not abuse its discretion in refusing to grant James' motion for a change of venue.

James also asserts that reversible error occurred when the prosecutor was allowed to speak about and introduce evidence of the stipulated facts. The stipulation provided that "neither side shall be required to present evidence on any of the [stipulated] facts," but it said nothing about either party

being precluded from divulging those facts to the jury. It is ludicrous to propose that relevant facts cannot be disclosed to the jury, simply because those facts are undisputed. A stipulation cannot act to prevent the prosecution from presenting all admissible evidence as to every element of the crime charged. *People v. Hills,* 140 A.D.2d 71, 532 N.Y.S.2d 269 (1988). We conclude that this issue is without merit.

James also asserts that the trial court erred in refusing to allow him to introduce evidence that Officer James Zimmerman made statements to James, to Beverly Norman, James' mother, and to Dee Mund, James' sister, that James did not know that he had killed Pamela and that James' actions and behavior indicated that he did not know what had happened to Pamela on the night of her death. James attempted to introduce these statements through the testimony of his mother and sister. However, Officer Zimmerman testified at the trial, and James' counsel did not attempt to question Officer Zimmerman about these alleged prior statements.

This proposed evidence constitutes a classic case of hearsay testimony that is inadmissible. *See* Rules 801 and 802, N.D.R.Ev. However, James asserts that these statements should have been admitted under Rule 701, N.D.R.Ev., as opinion testimony by lay witnesses, and under Rule 803(25), N.D.R.Ev., as trustworthy evidence admissible as an exception to the hearsay rule. James' argument is without merit. It ignores the fact that Officer Zimmerman was on the stand available to be questioned about these statements. Under these circumstances, we conclude that the trial court did not err in refusing to allow James to introduce this evidence through the testimony of his mother or sister.

James also asserts that the trial court committed reversible error by refusing to suppress evidence that James fired one round from the murder weapon earlier on the day that Pamela was shot. That gun has six chambers. Five rounds of gunfire were accounted for in Pamela's house. James concedes that he voluntary told investigating

officers that he had fired one shot from the gun at a tree at his sister's house. Neither officer included this information in the police report about the shooting. Not until the prosecutor commented to the officers that she wondered about the sixth bullet, did the officers reveal James' statement to her. Upon learning this information, the prosecutor disclosed it to defense counsel, but that was not until one day before the trial. James asserts that the prosecutor violated Rule 16, N.D.R.Crim.P., by failing to timely disclose this information, and he contends that the information should not have been allowed into evidence.

Rule 16(a)(1)(A), N.D.R.Crim.P., states in relevant part:

"Upon written request of a defendant, the prosecuting attorney shall permit the defendant to inspect and copy or photograph (i) any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the prosecution, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney; (ii) the substance of any oral statement the prosecutor intends to offer in evidence at the trial made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be an agent of the government...."

 Under the circumstances presented here, we conclude there was no violation by the prosecutor of the disclosure requirements. Immediately upon discovering the information the prosecutor disclosed it to James' counsel. The rule does not require more. Even if we assume the prosecutor should have with "due diligence" discovered and disclosed this information earlier, we are unpersuaded that James was prejudiced in any way. It is not error to allow nondisclosed information into evidence if the defendant has not been prejudiced by the State's failure to comply with the disclosure rules. See State v. Thomas, 420 N.W.2d 747 (N.D. 1988). Consequently, we conclude that the trial court did not err in denying James' request to suppress this evidence at the trial.

James also asserts on appeal that error was committed because the prosecutor read the charges to the jury from the original Information rather than from the Amended Information. He apparently bases this argument on the parenthetical notation in the transcript that, "the information was read by Ms. Burke." However, the prosecutor insists that the Amended Information, not the original Information, was read to the jury. Nevertheless, the written charge against James is identical in both documents, and defense counsel has failed to demonstrate how James could have been prejudiced by this alleged error.

In accordance with this opinion the judgment of conviction is affirmed.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.