[927 NYS2d 648]

The People of the State of New York, Respondent, v Allan Andrade, Appellant.

First Department, August 4, 2011

**APPEARANCES OF COUNSEL**

*Richard M. Greenberg, Office of the Appellate Defender*, New York City (*Joseph M. Nursey* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Thomas R. Villecco* and *Peter D. Coddington* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

Based in significant part on self-incriminating statements he made while in police custody, defendant was convicted of shooting another person to death. By raising a challenge at trial to the voluntariness of his inculpatory statements, defendant opened the door to the introduction of the evidence the police had placed before him to elicit those statements. The admission of this evidence—a videotape of the interview of a nontestifying witness and a photo array from which that witness had identified defendant—did not violate the hearsay rule or defendant's right of confrontation, because the evidence was admitted, not as proof of the matters asserted therein, but to rebut defendant's claim that his statements to the police were involuntary, a claim the People were required to disprove beyond a reasonable doubt (*see People v Huntley*, 15 NY2d 72, 78 [1965]; CPL 60.45 [1]; 710.70 [3]; CJI2d[NY] Statements [Admissions, Confessions]—Custodial Statements). In view of the People's heavy burden of proof on a jury issue that defendant himself injected into the case, it cannot be said that the prejudicial effect of the evidence in question outweighed its probative value. We therefore affirm defendant's conviction of first-degree manslaughter.

According to the People's evidence, Waldrine Ewool and his friends were approached on the street late at night by two men who got out of a car and demanded that Ewool hand over his expensive leather jacket. When Ewool refused, one of the perpetrators shot him at least four times, inflicting fatal wounds. The incident took place in the Bronx during the early morning hours of December 1, 2002, less than a half hour after a shooting incident in nearby Mount Vernon. A witness to the Mount Vernon shooting (in which no one was injured) later identified defendant from a photo array as one of the shooters in that incident. Police connected defendant to the Bronx homicide based on ballistics evidence showing that one of the guns fired in the Mount Vernon incident was the weapon used to kill Ewool the same night.

Under police questioning, defendant at first denied knowledge of the Bronx homicide, claiming that he had been at a party at the time, although the police had not yet told him what

time Ewool was shot. The police then showed defendant a videotape of the witness describing the Mount Vernon shooting and identifying defendant from a photo array as the shooter; defendant was also shown the photo array itself. Thereafter, defendant at first denied having been involved in either shooting, although he asked whether anyone was injured at Mount Vernon. After the police told him no one was injured in the Mount Vernon incident, defendant admitted that he had fired a gun at a van in Mount Vernon because he thought a person in the van was retrieving a gun. Defendant also admitted to having been present at the Bronx incident, but denied having fired a gun there. After further questioning, in which defendant was told that ballistics evidence showed that the same gun was used in both incidents, he stated that he had fired his gun into the air at the Bronx incident to ward off a perceived threat to his friend, but it was his friend who had shot Ewool. Defendant's pretrial motion to suppress his statements was denied.

At his first trial, defendant demanded that the voluntariness of his statements to the police be submitted to the jury. At the same time, he objected on hearsay grounds to the admission of the videotape and the photo array that had induced him to incriminate himself. Defense counsel asserted that defendant should "have a chance to cross-examine" the witness on the videotape. As an alternative to admitting the videotape and photo array or calling the witness himself, defense counsel offered to stipulate to have the jury told that defendant was shown a videotape "indicat[ing] that [he] participated in a shooting up at Mount Vernon." The court overruled the objection to the admission of the videotape and photo array, noting that "[t]he People are seeking to have the videotape played not for the truth of the matter. They're not asking the jury in any way to draw the conclusion that what the person on the videotape says is true and that, based upon that, what the defendant said about his participation in Mount Vernon is false."

The first trial ended in a hung jury. Before the start of the second trial, the People sought a ruling on the admissibility of the videotape and photo array. The People again argued that this evidence was admissible to show that defendant's statements were voluntary, a point the defense had controverted at the first trial. In response, defense counsel, while continuing to take the position that the voluntariness of the statements should be submitted to the jury, reasserted (without repeating) the arguments against the admission of the evidence that the

defense had raised at the first trial. The justice presiding at the second trial (who had not presided at the first trial but was familiar with its record) adhered to the ruling made at the first trial that the videotape and photo array were admissible to show the voluntariness of defendant's statements. At the second trial, when the videotape and the photo array were received into evidence and again during the final charge, the court instructed the jury as to the limited purpose for which the exhibits could be considered.[1] Defendant was convicted of manslaughter in the first degree.

■ At the outset, we reject defendant's argument that the inculpatory videotaped and written statements he made in custody should have been suppressed. In particular, the suppression court properly concluded that the conditions and circumstances of defendant's custody did not render his statements involuntary. Defendant's remaining arguments for suppression of his statements were also properly rejected.

■ We now turn to defendant's argument that the trial court erroneously admitted into evidence the videotape of the witness identifying him as a shooter in the Mount Vernon incident and the photo array from which that identification was made. Defendant argues that the admission of this material violated the rule against hearsay, as well as his right to confront the witnesses against him under the federal and state constitutions (US Const 6th, 14th Amends; NY Const, art I, § 6; see *Crawford v Washington*, 541 US 36 [2004]) and the rule against admission of out-of-court photographic identifications and bolstering of out-of-court identifications (see *People v Trowbridge*, 305 NY 471 [1953]).[2] However, as argued by the People and concluded by the trial court, the videotape and the photo array were offered, not for the truth of the matters asserted therein, but as evidence of the voluntary nature of the self-incriminating statements they induced defendant to make, and therefore the admis-

---

1. Among other things, the court instructed the jury: "I've admitted into evidence [the videotape and the photo array] shown to [defendant] not to prove what the person [in the video] picked out of the photo array, just to show what the defendant was seeing and hearing so that [you] could judge any response that the defendant made, if he did make a response. The limited purpose for which [you] are allowed to consider this evidence is what makes it nonhearsay under our law."

2. The People argue that only the hearsay claim is preserved. Since we find all of the claims unavailing for the same reasons (as discussed below), we need not determine the extent to which the arguments other than hearsay were preserved.

sion of this evidence did not violate the hearsay rule, *Crawford* or *Trowbridge*. Contrary to the argument of the defense, it is well established that a defendant who controverts the voluntary nature of his inculpatory statements opens the door to otherwise inadmissible evidence that places those statements in their correct context (*see People v Mateo*, 2 NY3d 383, 425-427 [2004], *cert denied* 542 US 946 [2004]).[3]

██ Although defendant has not emphasized this line of argument on appeal, at the first trial his counsel sought to avoid having the jury shown the videotape and the photo array by offering to stipulate to telling the jury that defendant was shown a videotape "indicat[ing] that [he] participated in a shooting up at Mount Vernon." The implicit predicate of this position (which counsel at the second trial adopted by reference) was that the proffered stipulation, by obviating the need for the videotape and the photo array themselves to show defendant's motive for his in-custody statements, so radically changed the balance between the evidence's probative value and its potential prejudice as to render it inadmissible (*see e.g. People v Scarola*, 71 NY2d 769, 777 [1988]). This argument fails because the offer of the stipulation cannot bear such outcome-determinative weight.

The general rule in most American jurisdictions has been expressed by the United States Supreme Court as follows:

> "[T]he prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, . . . a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the [prosecution] chooses to present it. . . . [T]he reason for the rule is to permit a party to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight" (*Old Chief v United States*, 519 US 172, 186-187 [1997] [internal quotation marks and citations omitted]).

Moreover, as the *Old Chief* Court further explained,

---

**3.** Defendant seeks to distinguish *Mateo* on the ground that there the Court of Appeals held admissible portions of the defendant's own statement that would have been inadmissible but for his challenge to the statement's voluntary nature. However, defendant cites no authority holding the principle recognized in *Mateo* inapplicable where, as here, the evidence needed to place the defendant's inculpatory statement in context is the recorded statement of an absent witness that prompted the defendant to make the statement. We are not persuaded that the *Mateo* principle should be so limited.

> "A party seemingly responsible for cloaking something [from the jury] has reason for apprehension, and the prosecution with its burden of proof may prudently demur at a defense request to interrupt the flow of evidence telling the story in the usual way.
>
> "In sum, the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it" (*id.* at 189).[4]

Similarly, a leading treatise states:

> "[A] colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate *moral force of his evidence* . . . . Hence, there should be no absolute rule on the subject; and the trial court's discretion should determine whether a particular admission is so plenary as to render the first party's evidence wholly needless under the circumstances" (9 Wigmore, Evidence § 2591, at 824-825 [Chadbourn rev 1981] [footnote omitted]).

New York law accords with the foregoing. In *People v Merzianu* (57 AD3d 385 [2008], *lv denied* 12 NY3d 819 [2009]), a prosecution for second-degree assault, this Court held that the trial court "properly exercised its discretion in permitting a physician to testify about the victim's injuries even though defendant had expressly conceded the element of serious physical injury" (*id.* at 386). In *Merzianu*, we relied upon the Second Department's decision in *People v Hills* (140 AD2d 71 [1988], *lv denied* 73 NY2d 855 [1988]), which, after an extensive discussion of this issue (140 AD2d at 77-83), concluded both that the trial court properly declined to compel the People to accept a defense offer to stipulate to an element of the crime and that the probative value of the evidence defendant had sought to exclude outweighed any unfair prejudice resulting from its admission (*see also* Prince, Richardson on Evidence § 8-215, at 523 [Farrell 11th ed] ["a party cannot be compelled to accept an

---

4. The *Old Chief* Court concluded, however, that the general rule did not apply in that case because the facts underlying the prior convictions to which the defendant wished to stipulate were irrelevant to the prosecution's case.

adversary's offer to stipulate to certain facts"]; *but see People v Robinson*, 93 NY2d 986, 987 [1999] [declining to "pass on the correctness" of the *Hills* holding because the defense "never effectively conceded the issue" in question]).

In this case, unlike in *Merzianu* and *Hills*, the defense did not offer a stipulation to avoid having the People present evidence proving a statutory element of the crime charged. Nonetheless, defendant's inculpatory statements were a key part of the People's proof of his guilt. Hence, by claiming to the jury that his statements had been coerced, defendant imposed on the People the additional burden of proving beyond a reasonable doubt that he made those statements voluntarily. In effect, the defense added an additional element to what the People were required to prove. It was only fair for the trial court to allow the People, in proving the voluntariness of defendant's statements, the same leeway to which the People were entitled in proving a statutory element of the crime under *Merzianu* and *Hills*. By choice of the defense, the People became obligated to tell, not only the story of the victim's death, but also the story of how defendant came to make the statements being used against him. It was just as necessary for the People "to present to the jury a picture of the events relied upon" (*Old Chief*, 519 US at 187) with regard to the voluntariness of defendant's statements as it was with regard to the statutory elements of the crime.

Given that the defense saddled the People with the burden of proving what motivated defendant to make the statements forming the centerpiece of the prosecution case, the People were entitled to "the legitimate *moral force of [their] evidence*" (*Hills*, 140 AD2d at 83, quoting Wigmore, *supra*) on that point. The People's case would have been significantly weakened had they been limited to defendant's cold, sterilized admission that he was shown a videotape "indicat[ing] that [he] participated in a shooting up at Mount Vernon." The People were entitled to have the jury see and hear what defendant had seen and heard at the police station—the video of a witness both identifying him from a photo array and describing his conduct in the Mount Vernon incident. Only from actually watching the video and examining the photo array would the jury have received the full picture of what prompted defendant to talk to the police. The People were entitled to present that full picture to carry their burden of disproving the contention that defendant's statements had been coerced simply by the length and circumstances

of his confinement. "The stipulation could not have carried the same force [as the information defendant actually received] in proving motive" (*United States v Thevis*, 665 F2d 616, 635 [5th Cir 1982], *cert denied* 459 US 825 [1982] [trial court properly received into evidence transcript of murder victim's FBI interviews detailing defendant's involvement in criminal activity, which transcript defendant had obtained before the murder, notwithstanding defendant's offer to stipulate to his knowledge of the victim's cooperation with the government]).

In sum, the trial court properly exercised its discretion in receiving the videotape and photo array into evidence with appropriate limiting instructions, which the jurors are presumed to have followed (*see People v Davis*, 58 NY2d 1102, 1104 [1983]). Notwithstanding the stipulation offered by the defense, the trial court reasonably determined that the probative value of the videotape and the photo array on the issue of the voluntariness of defendant's statements—an issue the defense chose to inject into the case—outweighed their potential to cause unfair prejudice. Moreover, we find adequate the court's repeated instruction to the jury that the videotape and the photo array were to be considered only for the limited purpose of determining the voluntary nature of defendant's self-incriminating statements, and not for the truth or falsity of the witness's identification of defendant as a shooter at Mount Vernon.

██ ██ Defendant's remaining arguments for reversal are without merit. Any error in precluding defense counsel from referring in his opening to defendant's statements, which the People asserted that they had not yet decided to use, was cured by the court's offering defense counsel an opportunity to reopen in the event the People subsequently decided to introduce those statements. The court articulated a reasonable basis for the exercise of its discretion to have defendant restrained during trial, in view of his demonstrated violent propensities, which were brought to its attention on the record. We note that there is no indication in the record that defendant's restraints were visible to the jury or that the restraints impeded his communication with counsel. Defendant's claim that the use of restraints violated his constitutional right to the presumption of innocence is not preserved, and we decline to review it in the interest of justice.

Finally, we find that defendant's conviction comports with the weight of the evidence, and we perceive no basis for a reduction of the sentence.

Accordingly, the judgment of the Supreme Court, Bronx County (Megan Tallmer, J.), rendered May 30, 2006, convicting defendant, after a jury trial, of manslaughter in the first degree, and sentencing him to 25 years of imprisonment, to be followed by five years of postrelease supervision, should be affirmed.

Tom, J.P., DeGrasse, Freedman and Manzanet-Daniels, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered May 30, 2006, affirmed.