In this wrongful death action, plaintiff-administratrix Lidia Sanchez is the natural mother of the 28-year-old decedent Luisa *502 Sanchez, who died approximately 10 months after being struck by a sanitation truck operated by defendant Noel Betancourt. Betancourt testified that he never saw decedent before the accident. An accident reconstruction expert called by plaintiff testified that Betancourt had a clear view for 250 to 300 feet ahead of him as he proceeded into the intersection where the accident occurred. He further concluded, based on sketches prepared by the police accident investigation squad and the location of a blood spot, that Betancourt illegally crossed over a double yellow line. Other evidence indicated that decedent was attempting to cross the intersection in an area clearly marked with signs warning pedestrians not to cross there.
Betancourt testified that, immediately after he realized he had struck a pedestrian, he ran to the back of the truck and saw that decedent was bleeding from her ears and nose, but that she was breathing and had her eyes open. The police officer who prepared the accident report noted that decedent was “semi-conscious” when he arrived at the scene and testified that he possibly made the notation because decedent opened her eyes at one point. A police sergeant wrote in his own report that decedent was “conscious and alert and not likely to die.” He also testified that he observed decedent breathing and with her eyes opened, although she was not communicating. An emergency medical technician who arrived on the scene wrote in her report that decedent was “in and out of consciousness,” which she testified was based on noises, such as moans or gurgling sounds, coming from decedent. Finally, a witness to the aftermath of the accident testified that decedent was “practically dead”; however, he was not able to observe her face.
Plaintiff designated Dr. Ronald Simon, a trauma surgeon, as an expert witness on the issue of conscious pain and suffering. Dr. Simon’s initial disclosure stated that he would testify that the decedent experienced conscious pain and suffering for 10 minutes following her accident. Nearly 3 years later, and 12 days before trial, plaintiff served an amended expert exchange stating that Dr. Simon would testify that decedent experienced some level of awareness, and thus consciously suffered for 15 days following the accident. This opinion would be based, the statement disclosed, on notes in decedent’s hospital chart indicating that, inter alia, she had purposeful withdrawal to painful stimuli, response to tactile stimuli and localized pain.
Defendants moved in limine to preclude testimony consistent with the more recent disclosure, claiming prejudicially late notice. The court granted the motion. Immediately prior to Dr. Simon’s testimony, plaintiff sought to reargue the motion to the *503 extent that Dr. Simon be permitted to testify that decedent suffered for 15 days, or alternatively, conforming the pleadings to the proof, that she experienced 23 minutes of pain and suffering. This was based on the EMT’s testimony that she observed decedent “in and out of consciousness” during the 23 minute period that she was at the scene. The court denied the application on the ground that the EMT did not explicitly testify that she observed decedent semi-conscious during the entirety of those 23 minutes.
Dr. Simon testified that, in light of the first responders’ reports which described decedent as “alert and conscious,” “semi-conscious,” or “in and out of consciousness,” “then there is no question that she can feel, and would be able to feel pain and suffering. And in the period that she was in consciousness, that she would have that sensation of both pain and suffering.” He also stated that he would “have trouble believing that she was unconscious” if her eyes were open. Defendants did not call a medical expert.
At the time of her death, decedent was employed as a dental assistant and was the mother of a five-year-old daughter. She lived with her daughter and her daughter’s father, her companion, whom she considered her husband. Because both parents worked, decedent’s daughter lived primarily with her maternal grandparents for the first two years of her life. Nevertheless, the companion testified that decedent was a very loving and good mother who spent all of her free time with her daughter. She took care of the household, did the laundry, cooking and food shopping, and bought her daughter clothes. She taught her daughter to be a good person and to be honest. The companion did testify, over objection, that when decedent was 27 years old, she was arrested for shoplifting and pleaded guilty to attempted petit larceny.
Decedent earned $19,197.69 annually. Plaintiff called Dr. Alan Leiken, an economist, who testified that, based on data from the United States Department of Labor Statistics, wages rose at an average of 3.3% over the previous 20 years. Using that factor, and a 20% discount to account for decedent’s personal consumption, Dr. Leiken calculated decedent’s past earnings as $76,579, and future earnings as $245,315. He also calculated decedent’s daughter’s loss of her mother’s services to age 21 as $345,936. This figure was based on 20 hours of services per week, and a loss of $19,000 per year. Defendants did not call their own economic expert.
The jury returned a liability verdict finding that both the defendants and decedent were negligent and that such negligence *504 was a substantial factor in causing the accident. The jury apportioned 30% fault against defendants and 70% against decedent. The jury awarded plaintiff nothing for conscious pain and suffering, $245,000 for past medical expenses, and nothing for past lost earnings. It awarded plaintiff $150,000 for future lost earnings, $325,000 for loss of parental guidance and $150,000 for loss of household services, each for a 13-year period.
Plaintiff moved pursuant to CPLR 4404 for judgment notwithstanding the verdict, arguing that the jury’s verdict was inadequate and against the weight of the evidence, and that the court incorrectly precluded plaintiffs expert from testifying to 15 days of pain and suffering and incorrectly permitted evidence of decedent’s plea to petit larceny. The trial court denied plaintiff’s motion, finding that it could not be said that the jury’s apportionment of liability was not based on a fair interpretation of the evidence. This was based on a finding that defendant Betancourt’s testimony that he did not see Sanchez until after the accident was not incredible as a matter of law. The court noted that the exchange of expert reports, which was served 12 days before trial, newly alleging 15 days of pain and suffering, without any explanation for the lateness, prejudiced defendants. The court found that, based upon plaintiffs prior exchange, which stated that she was only claiming 10 minutes of pain and suffering at the scene, defendants had lost the opportunity to speak with the hospital employees who made the notes or to hire an expert to defend against such a claim.
As for permitting evidence concerning decedent’s plea to a charge of shoplifting, the court observed that the jury charge concerning loss of parental guidance provides that moral assistance is to be considered in assessing the value of the claim. Moreover, the court noted that plaintiffs counsel conceded in his opening that the jury would need to hear evidence of “character, habits and ability.” Thus, the court held, the prior guilty plea was relevant on that point.
The court found that the damages to decedent’s daughter for loss of services did not deviate materially from what would be reasonable compensation under the circumstances. It further held that, since none of the witnesses could testify as to how long decedent was conscious, the jury could have rationally concluded that she was never conscious, supporting their award of no damages for past pain and suffering. As for the economic damages, the court noted that the jury was not required to accept the opinion of plaintiffs economist wholesale. For example, it found that some of the facts upon which the economist’s *505 opinion rested, such as that decedent’s daughter would not perform any household tasks and that decedent’s personal consumption rate was only 20%, were suspect and would have provided a reasonable basis for a jury to discount the economist’s proposed losses.
Plaintiffs argument that the jury’s verdict on liability was against the weight of evidence is unavailing. It is uncontested that decedent was crossing the road at a sharp curve where two roads converged, and where signs warned that crossing at that location was prohibited. Defendant Betancourt was proceeding with the right of way and there is no evidence that he was speeding or otherwise operating the garbage truck in an unsafe manner. The jury’s verdict indicates that it determined that decedent was more culpable for crossing at a dangerous intersection, despite the warning sign, and failing to see the truck, than the driver was for failing to see decedent. As plaintiff’s own accident reconstructionist testified, if Betancourt had a clear view of decedent, then decedent had a clear view of him. Thus, plaintiff has failed to show that “there [was] simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial” (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]).
We also agree with the court’s evidentiary rulings. It was not an improvident exercise of the court’s discretion to preclude plaintiffs expert from testifying to 15 days of alleged pain and suffering where, until the eve of trial, and without any explanation for lateness, plaintiff led defendants to believe that he would opine that she experienced 10 minutes of pain and suffering (see Birch Wathen Lenox School v Butler Rogers Baskett, P.C., 25 AD3d 440 [2006]; Lissak v Cerabona, 10 AD3d 308, 309-310 [2004]). Nor did the court err in allowing defendants to introduce evidence of decedent’s character, including a prior guilty plea to a shoplifting offense. Plaintiff sought to recover damages for loss of the “intellectual, moral and physical guidance” incurred due to the loss of Sanchez as a parent to her daughter (see PJI 2:320.2; see also Tilley v Hudson Riv. R.R. Co., 29 NY 252, 286-289 [1864]). This evidence is relevant to such a claim. In any event, plaintiffs counsel opened the door to evidence of decedent’s shoplifting by affirmatively placing her character in issue in his opening statement (see generally People v Andrade, 87 AD3d 160 [2011], lv denied 17 NY3d 951 [2011]).
In considering whether a jury’s damages award is inconsistent with the evidence, we are, again, guided by the notion that *506 the jury’s conclusions should be overturned only where they are, essentially, irrational (see Freeman v Kirkland, 184 AD2d 331, 332 [1992], citing Cohen v Hallmark Cards, 45 NY2d 493 [1978], supra). To the extent that a plea for damages depends on expert testimony, a jury’s determination not to accept such testimony and opinion must not be arbitrary (Williams v City of New York, 71 AD3d 1135, 1138 [2010]). It must be supported by other testimony or by the cross-examination of the expert (id.). With regard to conscious pain and suffering, such a claim “requires proof that the injured party experienced some level of cognitive awareness following the injury” (id. at 1137 [emphasis added]). Further, there is no requirement that “the fact finder . . . sort out varying degrees of cognition and determine at what level a particular deprivation can be fully appreciated” (McDougald v Garber, 73 NY2d 246, 255 [1989]).
Bearing these principles in mind, we find that the jury had no reasonable basis to deprive plaintiff of an award for decedent’s conscious pain and suffering. The weight of the evidence concerning decedent’s condition at the scene of the accident was that she showed some signs of consciousness, if not awareness (Williams, 71 AD3d at 1138). Further, while there is no direct evidence of the length of time that decedent was conscious, there is no question, based on the collective testimony of at least three witnesses who observed her, that she was conscious for a measurable amount of time. Dr. Simon testified, without expert contradiction, that the testimony of the on-scene witnesses established that decedent experienced some level of pain and suffering during her interludes of consciousness. Finally, no concession extracted from him during his cross-examination could reasonably have led the jury to believe that his expert conclusions were lacking in weight.
While the awards for loss of parental guidance and future lost earnings were supported by the evidence, we see no rational basis on which the jury could have completely deprived plaintiff of her claim for past lost earnings. Even assuming, arguendo, that the figures Dr. Leiken used to calculate future increases to decedent’s salary and the discount factor for personal consumption were questionable, the record reflects that plaintiff is entitled to something more than zero for the period her granddaughter lost the benefit of decedent’s salary between the accident and the trial (see McGorry v Madison Sq. Garden Corp., 4 AD3d 264 [2004]).
We also find that the jury did not act rationally in making its award for loss of household services. Defendants object to the fact that Dr. Leiken, in calculating this element of plaintiff’s *507 damages, assumed that decedent would have supplied the same number of hours of services each week, 20, until her daughter turned 21 years old. However, that assumption was not his own, but was based on governmental statistics. Defendants did not present their own expert to call those statistics into question.
We have considered the parties’ remaining arguments and find them unavailing. Concur — Mazzarelli, J.P., Andrias, Moskowitz, Acosta and Abdus-Salaam, JJ.