Scott v Posas (2021 NY Slip Op 02885)





Scott v Posas


2021 NY Slip Op 02885


Decided on May 06, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 06, 2021

Before: Manzanet-Daniels, J.P., Kapnick, Kennedy, Shulman, JJ. 


Index No. 22882/14E Appeal No. 13306 Case No. 2019-05498 

[*1]Jeffrey C. Scott, Plaintiff-Appellant-Respondent,
v
Karla Posas, Defendant, Logan Bus Company, Inc., and/or Little Richie Bus Service, Inc., Defendant-Respondent-Appellant.


Pollack, Pollack, Isaac & DeCicco LLP, New York (Jillian Rosen of counsel), for appellant-respondent.
Mauro Lilling Naparty, LLP, Woodbury (Katherine Herr Solomon of counsel), for respondent-appellant.



Order, Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered October 2, 2019, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion to set aside the jury verdict apportioning fault equally between him and defendant Logan Bus Company, Inc. and/or Little Richie Bus Service, Inc. (Logan) and awarding him the sums of $750,000 for past pain and suffering, $0 for future pain and suffering, and $0 for both past and future lost earnings, and for a new trial of those issues, and denied Logan's cross motion to set aside the verdict that plaintiff sustained a significant limitation of use within the meaning of Insurance Law § 5102(d) and to dismiss the complaint or, alternatively, to set aside the verdict awarding plaintiff the sum of $750,000 for past pain and suffering and for a new trial of that issue, unanimously modified, on the facts, to vacate the awards for past and future pain and suffering and loss of earnings and to remand for a new trial solely on those damages, and otherwise affirmed, without costs.
On June 25, 2013, plaintiff, a 42-year-old private equity manager at the time, was riding his motorized bicycle southbound on Walton Avenue and 153rd Street in the Bronx when defendant Karla Posas, driving a Logan bus, turned right in front of him, ostensibly striking him and knocking him off his bike. Plaintiff alleged that, due to the accident, he suffered a traumatic brain injury (TBI), a full thickness right rotator cuff tear requiring surgery, and several herniated discs in his cervical spine which would require future surgery. The jury unanimously found that plaintiff did not sustain a permanent consequential limitation, that he did sustain a significant limitation (although the jury did not specify which injury or injuries breached the threshold), and that both plaintiff and Logan were equally at fault for the accident, and awarded plaintiff, insofar as relevant to the appeal, the sums of $750,000 for past pain and suffering, $0 for future pain and suffering, and $0 for past and future economic losses.
Plaintiff moved to set aside the jury's apportionment of fault and the damages awards, the latter as being inconsistent and inadequate, and both as against the weight of the evidence. Logan cross-moved to set aside the jury's finding that plaintiff sustained a significant limitation of use and to dismiss the complaint, or alternatively, to set aside the jury's PP&S award as excessive. The court denied both motions.
The jury's findings that plaintiff sustained a "significant limitation of use of a body, organ or member" (Insurance Law § 5102[d]) and its apportionment of fault is supported by the record and not against the weight of the evidence.
The medical testimony established that plaintiff sustained a significant limitation to his left shoulder and cervical spine, as well as a traumatic brain injury, to wit, post-concussion syndrome, causally related to the accident. Dr. Robert Haar, plaintiff's [*2]orthopedic surgeon, testified that plaintiff sustained a "retracted full thickness tear," which he described as "catastrophic." The trauma was so severe that "the tendon actually tore off the bone." Plaintiff has functional limitations and will never have a normal shoulder. Plaintiff's orthopedist definitively ascribed this traumatic injury to the accident and not to any preexisting injury, explaining that "you don't see attritional ruptures."[FN1]
Dr. Adam Schneider, a neurologist, testified that plaintiff suffered from post-concussion syndrome, a spectrum of deficits including memory loss, deficits in cognition, anxiety, and depression. Dr. Shelly Shavant, a neurologist, psychiatrist, and life care planner, found that plaintiff had continuing cognitive difficulties with memory, attention, concentration and information processing; that he suffered from post-traumatic headaches; and that he also suffered from mood and anxiety symptoms. Plaintiff's treating neuropsychologist, Dr. Barbara Cicero, testified that plaintiff suffered a litany of deficits including difficulties with memory, cognition, attention, and processing speed. The medical experts attributed plaintiff's neurological sequelae to the accident.[FN2]
The evidence at trial also established that plaintiff sustained a significant limitation of use of his cervical spine that was causally related to the accident, including a herniated disc at the level of C6-C7 and a "disc complex" at the levels of C2-C3 and C3-C4, and associated neck limitations and arm symptoms, and will likely require future surgery. Plaintiff's orthopedic surgeon testified, based on his examination of plaintiff and review of the cervical spine MRI, that plaintiff's spinal injuries were causally related to the accident.
The jury's apportionment of fault was not against the weight of the evidence (see Killon v Parvotta, 28 NY3d 101, 107-108 [2016]). Plaintiff claimed that the Logan bus driver negligently turned right at an intersection in front of him as he was proceeding straight ahead in the bicycle lane on his bicycle, causing him to collide with the bus. Defendants claimed that plaintiff was negligent in, among other things, operating his motorized bicycle at a high rate of speed and failing to slow down when he saw the bus turning in front of him. The jury interpreted the evidence fairly in concluding that plaintiff and Logan were equally at fault for the happening of the accident.
The jury's award of $0 for future pain and suffering is inconsistent with its award of $250,000 for future medical expenses and, in any event, against the weight of the evidence and materially deviates from what would be reasonable compensation (see Paucay v D.P. Group Gen. Contrs./Devs., Inc., 187 AD3d 496, 497 [1st Dept 2020] ["where the jury verdict awards plaintiff damages for (PP&S) and (FME), but declines to award damages for (FP&S), the verdict on (FP&S) is contrary to a fair interpretation of the evidence and constitutes a material deviation [*3]from what would be reasonable compensation"]).
Given the jury's finding that plaintiff sustained a "significant limitation of use," and its award of future medical costs over a period of 25 years, it is clear that the jury found plaintiff to have suffered injuries that will continue to impair his life into the future, and the award of $0 for future pain and suffering is irreconcilable with this finding and cannot stand (see Bridges v City of New York, 18 AD3d 258 [1st Dept 2005]; Siragusa v City of New York, 283 AD2d 294 [1st Dept 2001]; Sescila v Garine, 225 AD2d 684 [2d Dept 1996] [failure to award future damages for significant limitation of use proximately caused by an accident irreconcilable with other findings and against the weight of the evidence]).
The award of $750,000 for past pain and suffering deviates materially from what would be considered reasonable compensation in light of plaintiff's shoulder, spine, and traumatic brain injuries (see e.g. Coleman v City of New York, 87 AD3d 401 [1st Dept 2011] [$600,000 for past and $1.2 million for future pain and suffering appropriate for a plaintiff who sustained two herniated discs that caused radiating pain but who did not undergo surgical treatment]; Ashkinazy v Consolidated Edison Co. of N.Y., Inc., 78 AD3d 434 [1st Dept 2010] [award of $1.5 and $3.5 million for past and future pain and suffering for a plaintiff who suffered a TBI]; Ernish v City of New York, 2 AD3d 256 [1st Dept 2003] [$1.1 million for past pain and suffering for an older plaintiff who suffered head, shoulder, and arm injuries after falling from a ladder]; Suarez v City of New York, 186 AD2d 415 [1st Dept 1992] [award of $1.62 million for past and future pain and suffering where the plaintiff suffered from post-concussion syndrome and declining mental health after being struck in the head with a nightstick]).
The $0 awards for past and future lost earnings were against the weight of the evidence in light of plaintiff's testimony regarding his prior income and current unemployment. Dr. Cornelius E. Gorman testified that plaintiff's "career is lost" and that he "cannot qualify for competitive employment" given his cognitive deficits. The jury had no reasonable basis for depriving plaintiff of damages for past and future loss of earnings (see Sanchez v City of New York, 97 AD3d 501, 506 [1st Dept 2012]). 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: May 6, 2021



Footnotes

Footnote 1: Plaintiff's alleged oral report in the emergency room that he had experienced shoulder pain for a two-month period does not call into question this conclusion. First, plaintiff denied making any such report and maintained that the entry in the emergency room notes was a mistake; he testified that he had never injured his shoulder in a prior accident. Second, there was no proof offered as to the magnitude or circumstances of any alleged preexisting injury. Defendants failed to establish that the limitations noted by plaintiff's expert were the result of a prior accident or prior injury as opposed to exacerbations caused by this accident (see Edouazin v Champlain, 89 AD3d 892, 894-895 [2d Dept 2011]).

Footnote 2: Defendants make much of plaintiff's negative MRI. The experts explained that negative MRIs are actually quite common in instances of traumatic brain injury, explaining that the brain trauma occurs on a microscopic or cellular level and that diagnosis depends on clinical examination and history.